330 So.2d 93 (1976)
E. W. MORING, Appellant,
v.
G. Ulmer MILLER et al., Appellees.
No. X-109.
District Court of Appeal of Florida, First District.
March 30, 1976.
Rehearing Denied April 27, 1976.
*94 Grover C. Robinson, Jr., of Robinson & Robinson, Pensacola, for appellant.
J. Klein Wigginton, of McClure & Wigginton, Tallahassee, and Henry C. Hamilton, Monticello, for appellees.
PER CURIAM.
Although it is impractical to recite in detail the complicated factual situation revealed by the voluminous record on appeal, a brief narration of the pertinent facts is necessary.
Appellant, plaintiff below, developed a new variety of pecan tree and contracted with Simpson Nursery Company (of which appellee Stuart C. Simpson was a partner) in 1959, whereby Simpson was to obtain and pay for the patent on the plant as well as develop, propagate, produce, and market the variety. Appellant received $500 for the patent right and, by agreement, was to receive 25 cents per tree for each tree sold by appellees during the first 10 years of the term of the patent, and 10 cents per tree royalty for each tree sold during the remainder of the patent term. After the patent was obtained, appellant executed an assignment of the patent rights to Simpson, "for its own use and behoof, and for its legal representatives and assigns." In 1963, Simpson sold its assets, including its contract with appellant, and the patent relating to the pecan tree developed by appellant (the Pensacola Cluster) to A.L. Dickerson, the successor owner of Simpson Nursery, Inc. and Gro-Plant Industries, Inc. After appellant became aware of the assignment, he continued to receive and accept reports concerning the sale of the Pensacola Cluster and royalty payments from the successor assignees. Appellant finally became dissatisfied with the arrangement, feeling that the number of Pensacola Cluster pecan trees actually sold was greater than the number of trees upon which his royalty payments were based; whereupon he filed his complaint in 1967, alleging that appellees had breached their contract with him by failing to properly account for and pay to him the royalties due, and in failing to diligently advertise *95 and promote the sale of nursery stock as required by the contract. Appellant also prayed for an accounting. A non-jury trial held on appellant's prayer for an accounting was held in 1972 and resulted in an order denying the right to an accounting. In 1974, a jury trial was held on the issue of breach of contract. The final judgment, in which appellant was awarded damages totaling less than $2,000 plus interest, reflected a finding by the trial court that the liability of Stuart C. Simpson should be limited to the period of time prior to October 1, 1963, and a directed verdict limiting the jury to a consideration of the damages due appellant from appellees Miller and Simpson as trustees under the reorganization of Gro-Plant Industries, Inc., for the growing season of 1971-72.
In its order of October 8, 1973, the trial court ruled that appellee Stuart C. Simpson would not be liable under his agreement with appellant subsequent to the date of the sale of assets to Alvin L. Dickerson (October 1, 1963). In so ruling, the trial court erred. Whether or not Simpson's contract with appellant was assignable, such assignment did not relieve Simpson of liability under the original contract with appellant. (6 Am.Jur.2d 293, "Assignments", Section 110; 6A CJS Assignments § 97, p. 753.) Appellees claim that there was a complete novation when appellant became aware of the assignments of his agreement, and continued to receive and accept reports and royalty payments from the successor assignees. However, the law is well settled that in order to constitute a novation, the parties must agree to a contract which is intended to take the place of a prior obligation. (23 Fla.Jur. 486, "Novation", Section 4) In general terms, mere acceptance of the obligation of the assignee without any intention to relieve the original debtor is not, in and of itself, sufficient to constitute a novation. (61 ALR2d 755 (1958)) There is no indication in the record that the parties intended that appellee Simpson be relieved from liability under the original contract. In the absence of such evidence, as a matter of law, there was no novation. (See Evans v. Borkowski, Fla.App.2d 1962, 139 So.2d 472))
Regarding the trial court having directed a verdict as to the limit of recovery for the growing seasons 1963 through 1974 (with the exception of the year 1971-72), there was no competent, substantial evidence upon which the jury could base a verdict for such period. Any verdict rendered by the jury for such period would necessarily be based upon speculation and conjecture. The trial court's ruling as to this point was correct.
The other points raised by appellant have been carefully considered and are found to be without merit.
Accordingly, we reverse for a new trial as to the liability of the estate of Stuart C. Simpson with the same directions as were previously applied by the trial judge unless competent, substantial evidence is introduced at the new trial as to the damages for the periods in question.
McCORD, J., concurs.
BOYER, C.J., concurs in part and dissents in part.
MILLS, J., dissents.
BOYER, Chief Judge (concurring in part and dissenting in part).
I concur that the learned trial judge erred in limiting the liability of Stuart C. Simpson, individually, to the period of time prior to October 1, 1963. However, in my view, the learned trial judge also erred when he refused to permit the jury to assess damages for failure to pay royalties for the growing seasons between 1964 and 1974, except for the season of 1971-72. *96 Apparently, the court found that appellant had presented no competent and substantial evidence to establish the amount claimed by him, other than the actual findings agreed to by appellees. Although the evidence in support of appellant's claim was not overwhelming, it was sufficient to require submission to the jury. The record reveals that appellees had misplaced certain portions of their business records, and the numerous business documents that were available to appellant were, to say the least, confusing. However, the record reflects sufficient testimony from which a jury could have found damages in a far greater amount than that contained in the trial court's directed verdict. Specifically, James Estes, Franklin County Extension Director and appellant's son-in-law, testified that in 1968, while on a visit to a nursery which carried the Pensacola Cluster variety, one of appellee's salesmen informed him that the Cluster was selling extremely well, and that one million of the Clusters had been sold in Texas and Mississippi and 16,000 had recently been sold in the state of New Mexico. While appellees have attempted to downgrade this testimony as mere puffing by a salesman, the fact remains that a jury might well have accepted it as true. Thus, the trial court should not have entered its order granting appellees' motion for directed verdict, where there existed conflicting evidence from which a jury composed of reasonable persons might have arrived at a different result than the trial court. (See Mathis v. Lambert, FlaApp.3d 1973, 274 So.2d 601)
I further concur in affirmance as to all points raised by appellant except as to the point discussed in the majority opinion and as to the point discussed in the foregoing paragraph hereof.
MILLS, Judge (dissenting):
I dissent. I would affirm the judgment in all respects.