ALAN E. SMITH, APPELLEE, v. HAROLD E. WREHE, APPELLANT.

261 N. W. 2d 620

Filed January 11, 1978. No. 41294.

Paul E. Watts, Gerald E. Moran, Robert C. Sigler, and Julianne M. Dunn, for appellant.

Joseph R. Moore, for appellee.

Heard before White, C. J., Spencer, Boslaugh, McCown, Clinton, Brodkey, and White, JJ.

Brodkey, J.

Alan E. Smith, plaintiff and appellee herein, initiated this action to recover the balance due on the purchase price of a contract for the sale of a taxicab company to Harold E. Wrehe, defendant and appellant herein. Defendant prayed for dismissal of plaintiff's petition on the grounds that he was not personally liable on the contract, and that he had been induced to sign the contract because of a false representation made by the plaintiff. The trial court determined as a matter of law that the balance due on the contract was owing to the plaintiff and that defendant's claim of misrepresentation was not sustained by the evidence. The court submitted to the jury only the issue of whether the defendant was

personally liable on the contract, or whether his assignee was liable. The jury returned a verdict in favor of the plaintiff, judgment was entered thereon, and defendant's motion for new trial was overruled. Defendant has now appealed to this court, contending that the trial court erred in failing to submit to the jury his claim of misrepresentation; and in failing to instruct the jury that should it find that the parties' intent was that the contract could be assigned by the defendant, then it must find that the assignee was liable for any indebtedness on the contract. We affirm the judgment of the District Court.

The facts relevant to this appeal are as follows. On October 1, 1973, defendant contracted to buy plaintiff's taxicab company, which was located in Council Bluffs, Iowa, for a price of $27,900. Initial payments totalling $12,900 were made at the time of closing. The contract provided that the balance of $15,000 "shall be satisfied by the promissory note of the Buyer." Immediately after this provision, the words "or his assignee" were deleted from the contract, which had been prepared by defendant's attorney, and both parties initialed the deletion. The balance due was to be paid in monthly installments of $500, with interest of 8 percent thereon.

The contract also provided: "It is expressly understood that the Buyer expects to cause a new corporation to be formed to own and operate the taxi cab business herein being purchased and to assume the Buyer's responsibilities under this Agreement. The Seller hereby consents to the assignment of the interest acquired by the Buyer under this Agreement to such corporation." The words "which shall then stand in the Buyer's stead to the same extent as if such corporation had been an original party to this Agreement" were deleted from the end of the last sentence quoted immediately above, this deletion being initialed by both parties.

At the time of the sale, the company, the Yellow Cab Company of Council Bluffs, was the only cab company in that city. Defendant did incorporate the newly purchased company, and assigned his rights and delegated his duties under the sales contract to the new corporation. The new corporation made payments on the balance due on the contract until March 1975, at which time neither the defendant nor the corporation made further payments. At the time of trial, approximately $12,000 remained owing on the contract.

The plaintiff testified that prior to the execution of the contract he told the defendant that the cab company was "the only cab company in Council Bluffs." Plaintiff introduced the defendant to city officials of Council Bluffs, in part to enable the defendant to ascertain whether the city would issue a cab company permit to another person so long as the defendant maintained a cab company without complaints. Plaintiff denied that he represented to defendant that he was selling a cab company franchise which was intended to be exclusive in nature.

On direct examination, defendant testified that plaintiff told him that he was buying the "exclusive right to the Yellow Cab Company of Council Bluffs," and that there would be no competition in Council Bluffs. Defendant also stated that a city official of Council Bluffs told him that "there was only one cab company and that was all the town could support." On cross-examination, defendant stated that he did not believe that plaintiff was "in cahoots" with the city officials with regard to the sale. Defendant also stated that he believed that the city officials were honest when they stated that only one cab company could exist in Council Bluffs. Finally, defendant was asked and answered questions as follows: "Q. And really Mr. Smith didn't tell you anything beyond what the city officials told you, did he? A. No, he said that it was only a one cab city, that it should

only be a one cab city. Q. And that is exactly what the city officials told you; isn't that right? A. That's right."

After the purchase, defendant's company did not fare well, apparently because of poor management. Approximately 1 year after the contract was executed, a second cab company began operation in Council Bluffs. This second company was founded by plaintiff's business associate, who also was a brother-in-law of the defendant. There was no evidence that the plaintiff was involved, directly or indirectly, with the second company, even to the extent of encouraging or suggesting its formation. Apparently some of the drivers who were employed by defendant's company chose to leave their employment and work for the second company. Defendant's company was eventually closed.

Defendant's claim concerning misrepresentation is that the plaintiff fraudulently represented to him that he would be able to continue the operation of the only authorized cab company in Council Bluffs. Since the trial court directed a verdict in favor of the plaintiff on this issue, we must review defendant's claim in accordance with the rule that a motion for a directed verdict must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference which can reasonably be deduced from the evidence. Jensen v. Shadegg, 198 Neb. 139, 251 N. W. 2d 880 (1977).

To maintain or defend an action on the ground of false representation, the pleader must allege and prove what representation was made, that it was false and so known by the party making it or was made without knowledge as a positive statement of known fact, that the pleader believed the representation to be true, and that he relied on and acted upon

it and was thereby injured. Cook Livestock Co., Inc. v. Reisig, 161 Neb. 640, 74 N. W. 2d 370 (1956). The fraud involved in the misrepresentation must relate to a present or preexisting fact, and generally may not be predicated on an inference concerning any event in the future or acts to be done in the future unless such representations as to future acts are falsely and fraudulently made with an intent to deceive. Central Constr. Co. v. Osbahr, 186 Neb. 1, 180 N. W. 2d 139 (1970); Transportation Equipment Rentals, Inc. v. Mauk, 184 Neb. 309, 167 N. W. 2d 183 (1969). See, also, Boettcher v. Goethe, 165 Neb. 363, 85 N. W. 2d 884 (1957).

In the present case, it is apparent that the defendant, as a matter of law, did not present sufficient evidence to sustain his burden of proof on the issue of misrepresentation. The alleged representation as described by defendant on cross-examination, was simply that Council Bluffs "was only a one cab city, (and) that it should only be a one cab city." At the time of the contract, the company purchased by the defendant was in fact the only cab company in Council Bluffs. Plaintiff's prediction that Council Bluffs would remain a "one cab city" so long as defendant operated the company properly cannot be said to be more than an opinion concerning a future event. There was no evidence that the prediction was falsely and fraudulently made with an intent to deceive. Defendant acknowledged that he did not believe that the city officials were in collusion with plaintiff in regard to the sale, and that he believed the officials were speaking honestly when they told him that Council Bluffs was and would remain a "one cab city." Furthermore, defendant admitted that plaintiff had said nothing more than did the city officials. Plaintiff did not guarantee to the defendant that no other persons would attempt to operate a cab company, and in fact could not have done so, as he had no control over the issuing of permits by of-

ficials in Council Bluffs, a fact of which defendant was aware.

It should be noted that the contract expressly prohibited plaintiff from participating, either directly or indirectly, in the taxicab business in Council Bluffs for 2½ years after the signing of the contract. Defendant did not allege, nor did he attempt to prove, that plaintiff had violated this provision of the contract because of any involvement whatsoever with the second cab company which began operating in Council Bluffs. Instead, defendant relied on his claim of misrepresentation. Defendant, although new to the cab business was an experienced businessman. The fact that he made inquiries of city officials with respect to the likelihood of future competition indicates that he knew that the plaintiff, alone, was not in the position to guarantee that no competition would arise.

On the evidence presented, giving the defendant the benefit of every inference which may be drawn therefrom, we must conclude that defendant did not sustain his burden of proof on the claim of fraudulent misrepresentation as a matter of law. Central Constr. Co. v. Osbahr, *supra*; Boettcher v. Goethe, *supra*; Cook Livestock Co., Inc. v. Reisig, *supra*.

Defendant's second assignment of error is that the jury was not properly instructed in regard to the issue of whether defendant was personally liable on the contract, or whether his assignee, his cab company, was the only party liable. The jury was advised of defendant's allegations that the parties had contemplated defendant's assignment of the contract to his cab company, and that the company, and not the defendant, was to be the sole party liable after the assignment. The jury was instructed that it must determine the intent of the parties as expressed in the contract in order to decide whether the defendant was personally liable thereon. The trial court did not specifically instruct the jury as to

the applicable rules of law concerning when an assignor is not liable on a contract as a result of an assignment and a novation thereof.

Although defendant complains that the jury was not adequately instructed with respect to the law of assignment and novation of contracts, he does not state precisely what instructions he believes should have been given. In his assignment of error, he states that the trial court erred in failing to instruct the jury "that should the parties' intent that the contract contemplate assignment to a corporation be found, then the jury must find that the corporation was liable for the indebtedness." That is not the law and such an instruction would have been erroneous. It is elementary that a contracting party cannot, by an assignment of the contract, relieve himself of his obligations thereunder, even where the contract is expressly made assignable and contains a provision that it is binding on the assignee of a party. Accordingly, except where a party to the contract expressly agrees to accept the responsibility of the other party's assignee in the stead and place of that of the assignor, making a new contract by way of novation, the assignor remains bound by his obligations under the contract and is liable if the assignee defaults. See, 4 Corbin on Contracts, Assignment, § 866, p. 452; Calamari & Perillo, Contracts, § 277, p. 430 (1970); 6 Am. Jur. 2d, Assignments, § 110, p. 293; 6A C. J. S., Assignments, § 97, p. 753, and cases cited therein.

The trial court in the present case instructed the jury that it was to ascertain whether the parties to the contract intended that the defendant was to be relieved of liability thereon after he assigned it to his cab company. The jury obviously concluded that there was no such intention. If anything, the lack of a more specific instruction was probably in favor of the defendant rather than the plaintiff. Defendant did not request more detailed instructions,

nor did he object to the instructions given. Where a general charge fairly presents the case to the jury, it is not error for the trial court, in the absence of a request for a more specific instruction, to fail to give a more elaborate one. State v. Lynch, 196 Neb. 372, 243 N. W. 2d 62 (1976); Rawlings v. Andersen, 195 Neb. 686, 240 N. W. 2d 568 (1976).

It should be noted in this case that it is doubtful the question of defendant's liability on the contract should have been submitted to the jury. It is the general rule that where a provision in a written contract is not ambiguous, the trial court must determine its meaning as a matter of law, and not submit the issue to the jury. Nebraska-Im-Pruv-All, Inc. v. Sass, 197 Neb. 261, 247 N. W. 2d 924 (1976). A provision of a contract is ambiguous when, considered with other pertinent provisions as a whole, it is capable of being understood in more senses than one. Frank McGill, Inc. v. Nucor Corp., 195 Neb. 448, 238 N. W. 2d 894 (1976). The pertinent provisions of the contract in this case have been set forth above. The parties expressly deleted from the contract the proposed provision that defendant's assignee should "stand in the Buyer's stead to the same extent as if such corporation had been an original party to" the contract. Similarly, the parties deleted the proposed provision that the defendant's assignee should satisfy the balance due on the contract. Therefore, not only did the parties fail to expressly agree that the defendant's assignee should stand in defendant's stead, they expressly deleted the proposed provisions which so provided. Apparently the trial court found the provisions of the contract ambiguous and therefore submitted the issue to the jury. We are inclined to believe the contract is not in fact ambiguous, and that, under the authorities cited above, the defendant should have been held liable on the contract as a matter of law. In light of this conclusion, it is apparent that no reversible error occurred due

to allegedly erroneous instructions, as the issue should not have been submitted to the jury in the first instance; and any possible error in the giving of the instruction redounded to the benefit of the defendant.

Defendant also argues that plaintiff should be estopped from asserting a claim against him because he knew of the assignment. It is apparent from what has already been stated that plaintiff's knowledge of the assignment, and even his consent to the assignment of that contract, does not estop him from holding the defendant liable. Furthermore, the claim of estoppel has no basis whatsoever in either the pleadings or the evidence adduced at trial, nor does the record indicate that the issue of estoppel was ever raised in the trial court. Defenses not raised or litigated in the trial court cannot be urged for the first time on appeal. See, Ford v. County of Perkins, 190 Neb. 304, 207 N. W. 2d 694 (1973); Hardy v. Hardy, 161 Neb. 175, 72 N. W. 2d 902 (1955).

We find that the contentions of the appellant are without merit, and we therefore affirm the judgment of the District Court.

AFFIRMED.