Charles E. BOSWELL and Stephen J. Snyder, Appellants (Defendants Below),

v.

Marcia K. LYON, Appellee (Plaintiff Below),

and

Mark D. Batties, and Charles E. Roberts, Jr., Appellees (Co-Defendants Below).

No. 2–1076A387.

Court of Appeals of Indiana, Second District.

March 24, 1980.

Rehearing Denied May 21, 1980.

David B. Hughes, Hughes & Hughes, Indianapolis, for appellants.

John P. Price, Martha Schmidt and Robert C. Wolf, Bingham, Summers, Welsh & Spilman, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Appellants Charles E. Boswell (Boswell) and Stephen J. Snyder (Snyder) appeal from the trial court's summary judgment establishing their liability on a land sale contract in the amount of $21,896 plus interest and attorneys fees (a total of $29,406), claiming that there were genuine issues of material fact as to (1) whether "assignment" was an ambiguous term in the 1960 land sale contract, (2) whether a novation occurred, and (3) whether there was a discharge of the surety relationship.

We affirm.

## FACTS

Boswell and Snyder entered into a contract with Martha S. Hadley on September 9, 1960, for the conditional sale of an apartment building located at 2208 Park Avenue in Indianapolis (the 1960 contract). The contract was a standard form contract prepared by the Indianapolis Bar Association. Purchase price was $30,000, to be paid by a $3,000 down payment, and monthly payments of $135. The unpaid balance was to bear interest at five (5%) percent per annum. A final balloon payment of the remaining balance was due not later than March 9, 1974.

The contract contained this provision as to assignment:

6. *Assignment of contract.* Neither this contract, Purchaser's interest therein, nor Purchaser's interest in the Real Estate, shall be sold, assigned, pledged, mortgaged, or transferred by Purchaser without the written consent of vendor.

In 1962, Boswell and Snyder entered a "contract on a contract" to sell their interest under the 1960 contract to Robert E. and Marcia S. Brazelton. In 1964, this contract was mutually terminated, and Boswell and Snyder resumed management and possession of the property.

On September 25, 1964, Boswell and Snyder assigned their rights under the contract to Mark D. Batties, also a defendant, and

Hadley consented to the assignment. The transaction was accomplished by an instrument which stated:

### Assignment

September 25, 1964

This is to certify that for value received and subject to the consent of the owner of the property described in the within Conditional Sales Contract, the undersigned do hereby sell, assign, transfer and set over unto MARK D. BATTIES all of his right, title and interest in and to the said conditional Sales Contract.

/s/ CHARLES E. BOSWELL
Charles E. Boswell

/s/ STEPHEN J. SNYDER
Stephen J. Snyder

### ACCEPTANCE

September 25, 1964

The undersigned hereby accept the above assignment of the within Conditional Sales Contract and hereby expressly agree to be bound by all of the terms and conditions of said Conditional Sales Contract.

/s/ MARK D. BATTIES
Mark D. Batties

### CONSENT

September 25, 1964

The undersigned, owner of the property described in the within Conditional Sales Contract, hereby consents to the above assignments and acceptance thereof.

/s/ MARTHA S. HADLEY
Martha S. Hadley
By Elmer E. Lyon
Attorney in Fact

Hardley assigned her rights as owner and vendor under the contract to Marcia K. Lyon (Lyon), on July 10, 1968. No issue concerning this assignment of the vendor's rights has been presented.

On February 1, 1969, Batties assigned his rights under the contract to Charles E. Roberts, Jr., also a defendant. Lyon consented to that assignment. The instrument used was the same form as used in the 1964 assignment, with Batties as the assignor, Roberts as the assignee, and Lyon as the vendor giving consent.

In March, 1973, Lyon's attorney notified Snyder by letter that the final payment on the 1960 contract was due March 9, 1974, and that Boswell and Snyder may face potential liability under the contract because of the apparent likelihood of a .default. The letter indicated that the small payments under the contract had left a large balance due on the final payment. Furthermore, the current assignee under the contract, Roberts, did not appear to be in a financial position to meet the large balloon payment.

Boswell, Snyder and Batties were all notified by letter of Roberts' default on two monthly payments in 1973.

The last payment under the contract was made January 9, 1974. On March 9, 1974, the remaining contract balance of $21,896 came due, but remained unpaid. Suit was then filed by Lyon against Boswell, Snyder, Batties and Roberts.

After the initial filing of a motion for summary judgment by Lyon, seven affidavits were filed: two by Elmer E. Lyon, the plaintiff's attorney, one by Martha S. Hadley, and two each by defendants Boswell and Snyder.

A default judgment for $29,406 plus costs and interest was entered against Batties on June 7, 1974. A summary judgment for the same total was entered against Roberts on July 22, 1975; the property at 2208 Park Avenue was ordered sold and the proceeds applied to the judgment. Finally, on September 8, 1976, a final judgment .was entered against Boswell and Snyder on Lyon's motion for summary judgment. Damages of $29,406 plus costs and interest were awarded, and the property at 2208 Park Avenue was again ordered sold and the proceeds applied toward the judgment. It is from this judgment that Boswell and Snyder appeal.

To further put this case in perspective, we should disclose the condition of the apartment house at 2208 Park Avenue. In April, 1975, nearly a year after this action was commenced, an order to demolish the apartment building was issued by the Division of Code Enforcement of the City of Indianapolis. The order stated that the building was dangerous and unsafe.

On May 29, 1975, the Division of Public Health of the Health and Hospital Corporation of Marion County cited the apartment building for numerous violations of the minimum standards for housing, and prohibited occupation of the dwelling unless all defects were corrected. Failing such corrections, the building was ordered razed by August 5, 1975.

As of September 1, 1976, the property, which was ordered sold to satisfy a nearly $30,000 judgment, had a fair market value of $3,000.

## ISSUES

*ISSUE ONE*—Was the "assignment" clause of the 1960 contract ambiguous, thereby creating a material issue of fact as to the intent of the parties in using that clause?

*ISSUE TWO*—Was there a genuine issue of material fact as to whether ther was a novation when the 1960 contract was assigned, accepted, and consented to in 1964?

*ISSUE THREE*—Was there a genuine issue of material fact as to whether Boswell and Snyder were discharged under the 1960 contract by the 1969 assignment from Batties to Roberts, done with the consent of Lyon, but without notice to Boswell and Snyder?

## DECISION

### Scope of Review

It is necessary for us to somewhat tediously recite the standards for reviewing the grant of a summary judgment.

■ A summary judgment may be granted *only* "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is *no genuine issue as to any material fact* and that the moving party is *entitled to a judgment as a matter of law.*" (emphasis added) Ind.R.Tr.P. 56(C). In determining whether a material issue of fact exists, the facts alleged by the party opposing the motion must be taken as true, and all doubts must be resolved against the proponent of the motion. *Crase v. Highland Village Value Plus Pharmacy* (1978), Ind.App., 374 N.E.2d 58; *St. Joseph Bank & Trust Company v. The Wackenhut Corporation* (1976), Ind.App., 352 N.E.2d 842; *Mayhew v. Deister* (1969), 144 Ind.App. 111, 244 N.E.2d 448. Even if the facts are undisputed, all reasonable inferences must be resolved against the moving party. *St. Joseph Bank & Trust Company v. The Wackenhut Corporation, supra.* Only if from this viewpoint there is no genuine issue as to any material fact may the summary judgment be sustained. *Kleen Leen, Inc. v. Mylcraine* (1977), Ind.App., 369 N.E.2d 638; *Mayhew v. Deister, supra.*

■ The burden is upon the proponent of the motion to demonstrate the absence of any issue of material fact and that the law has been properly applied. *Levy Company v. Board of Tax Commissioners* (1977), Ind. App., 365 N.E.2d 796; *Swanson v. Shroat* (1976), Ind.App., 345 N.E.2d 872.

*ISSUE ONE*—Was the "assignment" clause of the 1960 contract ambiguous, thereby creating a material issue of fact as to the intent of the parties in using that clause?

*PARTIES' CONTENTIONS*—Boswell and Snyder assert that the term "assignment" in the 1960 contract was ambiguous in that it did not state whether the purchasers would remain secondarily liable once the contract was assigned, and that there was a material issue of fact as to the intent of the parties in using that term. Lyon contends the term "assignment" is not ambiguous, and that its use did not contemplate a release of liability for any future assignments.

*CONCLUSION*—The assignment clause of the 1960 contract was not ambiguous, and therefore no genuine issue of material fact existed as to the parties' intent in using that clause.

■■ The cardinal principle in interpreting contracts is to give effect to the meaning and intention of the parties, as expressed in the language of their contract. *Colonial Mortgage Co. of Indiana v. Windmiller* (1978), Ind.App., 376 N.E.2d 529; *Board of Directors, Ben Davis Conservancy District v. Cloverleaf Farms, Inc.* (1977), Ind.App., 359 N.E.2d 546, *rehearing denied* 360 N.E.2d 1039; *Miller v. Frankfort Bottled Gas, Inc.* (1964), 136 Ind.App. 456, 202 N.E.2d 395. A liberal or technical construction should not be given to an isolated clause thereby defeating the true meaning of the contract. *Allied Structural Steel Co. v. State* (1971), 148 Ind.App. 283, 265 N.E.2d 49.

■■ If there is no ambiguity, and the terms are plain and clear on the face of the document, such terms are conclusive as to the contract's meaning. *Fort Wayne Bank Building, Inc. v. Bank Building and Equipment Corporation of America* (1974), 160 Ind.App. 26, 309 N.E.2d 464; *Albert Johann & Sons v. Echols* (1968), 143 Ind.App. 122, 238 N.E.2d 685. The test for ambiguity is whether reasonable men would find the contract subject to more than one interpretation. *Colonial Mortgage Company of Indiana v. Windmiller, supra; Tastee-Freez Leasing Corporation v. Milwid* (1977), Ind. App., 365 N.E.2d 1388; *Ebert v. Grain Dealers Mutual Insurance Company* (1973), 158 Ind.App. 379, 303 N.E.2d 693.

Turning to the matter at hand, we restate the assignment clause of the 1960 contract:

6. Assignment of Contract. Neither this contract, Purchaser's interest therein, nor Purchaser's interest in the Real Estate, shall be sold, assigned, pledged, mortgaged, or transferred by Purchaser without the written consent of Vendor.

This court cannot remove the term "assigned" from its context in the contract and apply a technical meaning. *See Allied Structural Steel Company v. State, supra. See also Evansville-Vanderburgh School Corporation v. Moll* (1976), 264 Ind. 356, 344 N.E.2d 831; *Tastee-Freez Leasing Corporation v. Milwid, supra; General Insurance Company of America v. Hutchison* (1968), 143 Ind.App. 250, 239 N.E.2d 596.

■ The assignment clause of the 1960 contract required *consent of the vendor* to any transfer by the purchaser. This was the essential thrust of the clause. The focus was on the necessity of consent. The term "sold, assigned, pledged, mortgaged, or transferred" merely emphasized that consent was required no matter what form the transfer might take, or the nature of the purchasers' interest being transferred. The language used does not reasonably lend itself to the interpretation that specific definition of the legal effect of any of these specified transactions was contemplated. Differently stated, the liability of Boswell and Snyder would not reasonably be construed to be determined as arising out of this contractual term.

The legal effect of any later transactions, *provided it was consented to by the vendor,* would then depend upon the terms of any such later transaction.

Thus, we conclude the assignment clause was not ambiguous, and the trial court did not err in granting a summary judgment as to this issue.

Now we turn to whether the 1964 assignment itself constituted a novation.

*ISSUE TWO*—Was there a genuine issue of material fact as to whether there was a novation when the 1960 contract was assigned, accepted, and consented to in 1964?

*PARTIES' CONTENTIONS*—Boswell and Snyder maintain that a novation is a matter of the parties' intent and that the conduct of the parties surrounding the assignment created a question of fact as to whether there was an intent to create a novation. Lyon contends that a material issue of fact was not created as to the existence of any

necessary element to a novation; there was no consideration, no new contract between the substituted parties, no extinguishment of the old contract, and there was a failure to comply with the statute of frauds.

*CONCLUSION*—The 1964 assignment as a matter of law did not operate as a novation, and therefore the trial court's granting of a summary judgment was proper as to this issue.

A novation simply means the substitution of one debtor for another by mutual agreement of the parties. *Kelso v. Fleming* (1885), 104 Ind. 180, 3 N.E. 830; 22 *I.L.E. Novation.*

Only if a party has agreed to a substitution in the place of the other party is that other party relieved of liability. *Navin v. New Colonial Hotel, Inc.* (1950), 228 Ind. 128, 90 N.E.2d 128. Our Supreme Court has recognized this basic truth:

> We approve what was said in *Crane Ice Cream Co. v. Terminal Freezing & Heating Co.* (1925), 147 Md. 588, 128 A. 280, that "Anyone . . . who owes money cannot by any act of his own, or by any act in agreement with any other person than his creditor or the one to whom his performance is due, cast off his own liability and substitute another's liability. If this were not true, obligors could free themselves of their own obligations by the simple expedient of assigning them."

*Naven v. Colonial Hotel, Inc., supra,* 228 Ind. at 134–35, 90 N.E.2d at 130–31. *See* 6 Am.Jur.2d *Assignments* § 110, 6A C.J.S. *Assignments* § 97.

While there is a paucity of case law on the subject of novation in Indiana, it is reasonable to conclude that novation consists of four elements: there must be an existing valid contract; all parties must agree to a new contract; the old contract must be extinguished by the new contract; and the new contract must be valid. *Indianapolis Morris Plan Corporation v. McAtee* (1955), 125 Ind.App. 372, 125 N.E.2d 261.

Whether a novation has occurred is a matter of the intent of the parties. 58 Am.Jur.2d *Novation* § 20 and cases cited therein. *See also Armour and Company v. Anderson* (1943), 114 Ind.App. 485, 51 N.E.2d 496; *Jones v. Austin* (1901), 26 Ind.App. 399, 59 N.E. 1082; *see e. g., General Electric Company v. Lombardi,* (D.Md.1959) 173 F.Supp. 841. However, the issue of novation presents an issue of fact only if the agreement is equivocal or uncertain; when the agreement is unequivocal, the existence of a novation is a question of law. 58 Am.Jur.2d *Novation* § 20.

In construing assignment agreements, the general rules of contract interpretation apply. 3 *I.L.E. Assignments* § 41. This means that if the language of the agreement is plain and clear, its interpretation is a matter of law. *Wilson v. Kauffman* (1973), 156 Ind.App. 307, 296 N.E.2d 432. The court will look to the contract language as expressing the intent of the parties. *Colonial Mortgage Co. of Indiana v. Windmiller* (1978), Ind.App., 376 N.E.2d 529; *Board of Directors, Ben Davis Conservancy Dist. v. Cloverleaf Farms, Inc.* (1977), Ind.App., 359 N.E.2d 546. Only if the language is ambiguous may extrinsic evidence be used to determine the parties' intent; *Huntington Mut. Ins. Co. v. Walton* (1979), Ind.App., 392 N.E.2d 1182; *Wilson v. Kauffman, supra.* A word or phrase is ambiguous if reasonable men could differ as to its meaning. *Colonial Mortgage Co. of Indiana v. Windmiller, supra; Board of Directors, Ben Davis Conservancy Dist. of Cloverleaf Farms, Inc., supra.*

Turning to the matter at hand, we again set forth the 1964 assignment agreement, acceptance and consent:

### Assignment

#### September 25, 1964

This is to certify that for value received and subject to the consent of the owner of the property described in the within conditional Sales Contract, the undersigned do hereby sell, assign, transfer and set over unto MARK D. BATTIES, all of his right, title and interest in and to the said Conditional Sales Contract.

/s/  CHARLES E. BOSWELL
Charles E. Boswell

/s/ STEPHEN J. SNYDER .
Stephen J. Snyder

ACCEPTANCE

September 25, 1964

The undersigned hereby accept the above assignment of the within Conditional Sales Contract and hereby expressly agree to be bound by all of the terms and conditions of said Conditional Sales Contract.

/s/ MARK D. BATTIES
Mark D. Batties

CONSENT ·

September 25, 1964

The undersigned, owner of the property described in the within Conditional Sales Contract, hereby consents to the above assignments and acceptance thereof.

/s/ MARTHA S. HADLEY
Martha S. Hadley
By Elmer E. Lyon
Attorney in Fact

In this situation, assignment is a two-sided coin, both sides being inextricably connected yet facing in opposite directions. First, there is the assignment of a right (or benefit) under the contract, here an interest in land. Second, there is the delegation (or assignment) of a duty,[1] here the duty to pay the purchase price of property. See J. Calamari & J. Perillo, The Law of Contracts (1970) § 277; 3 Williston on Contracts (3d ed. 1960) § 411; 4 Corbin on Contracts (1951) § 866.

■ The fact that there has been a delegation (or assignment) of the duty to pay does *not*, however, equate with a novation. It does not relieve the vendee of his contract liability.

Prof. Corbin in his treatise on Contract Law makes a splendid statement of the limited effect of an assignment:

An assignment is an expression of intention by the assignor that his duty shall immediately pass to the assignee. Many a debtor wishes that by such an expression he could get rid of his debts. Any debtor can express such an intention, but it is not operative to produce such a hoped-for result. It does not cause society to relax its compulsion against him and direct it toward the assignee as his substitute. In spite of such an "assignment," the debtor's duty remains absolutely unchanged. The performance required by a duty can often be delegated; but by such a delegation the duty itself is not escaped.

4 Corbin on Contracts, *supra* 866 at 452.

■ The document before us assigned the rights and interests of Boswell and Snyder, and delegated contractual obligations to Batties and no more. The agreement did not mention novation, relieving of contractual liabilities, substitution of parties to the contract, or extinguishing the old contract. Without some such indicator, we cannot conclude that this assignment was equivocal or uncertain or that a novation could have been in any way intended.

■ Something more than the use of the term "assignment" must be present to create a material issue of fact as to the existence of a novation. Likewise, the mere consent of the creditor to the assignment does not create an issue as to novation. See Ingalls Iron Works Co. v. Fruehauf Corp. (5th Cir. 1975) 518 F.2d 966; Smith v. Wrehe (1978), 199 Neb. 753, 261 N.W.2d 620; Moring v. Miller (1976), Fla. App., 330 So.2d 93.

In Smith v. Wrehe, supra, the Nebraska Supreme Court succinctly summarized the law:

"It is elementary that a contracting party cannot, by an assignment of the

---

1. Used properly, the term "assignment" applies only to contract rights, while duties are "delegated." *University Case Work Systems v. Bahre* (1977), Ind.App., 362 N.E.2d 155; J. Calamari & J. Perillo, The Law of Contracts (1970), § 254 (However some noted scholars freely interchange the terms. *See* 4 Corbin on Contracts (1951) § 866). Here the rights were assigned under the "Assignment" section of the agreement, while the duties were delegated in the "Acceptance" section by Batties' agreement to be bound by the contract terms.

contract, relieve himself of the obligations thereunder, even where the contract is expressly made assignable and contains a provision that it is binding on the assignee of a party. Accordingly, *except where a party to the contract expressly agrees to accept the responsibility of the other party's assignee* in the stead and place of that of the assignor, making a new contract by way of novation, *the assignor remains bound by his obligations* under the contract and is liable if the assignee defaults." (emphasis added) 261 N.W.2d at 625. The Nebraska court stated that this was so regardless of whether the creditor had knowledge of or had consented to the assignment.

*See Contemporary Mission, Inc. v. Famous Music Corp.* (2d Cir. 1977) 557 F.2d 918; *Ingalls Iron Works Co. v. Fruehauf Corp., supra; Moring v. Miller, supra.*

So we conclude that nothing in the language used by the parties in any way infers an intent to relieve Boswell and Snyder of their contractual obligations and to substitute Batties in their stead. As a matter of law, there was no novation, and the summary judgment on this issue was proper.

*ISSUE THREE*—Was there a genuine issue of material fact as to whether Boswell and Snyder were discharged under the 1960 contract by the 1969 assignment from Batties to Roberts, done with the consent of Lyon, but without notice to Boswell and Snyder?

*PARTIES' CONTENTIONS*—Boswell and Snyder contend that, even if they remained liable on the 1960 contract after the 1964 assignment, that liability was merely as a surety. Thereafter, the 1969 assignment from Batties to Roberts made without Boswell and Snyder's permission, resulted in a change of the principal in the surety relationship, and therefore discharged Boswell and Snyder from their underlying obligation on the contract price. Lyon asserts that a subsequent assignment does not affect the underlying obligation on the 1960 contract.

*CONCLUSION*—Boswell and Snyder were not discharged by the 1969 assignment,[2] even though it was executed without their knowledge.

The general rule is that absent a provision to the contrary a party may delegate his duties under a contract. Calamari & Perillo, *supra* ; 3 Williston on Contracts, *supra* § 411. An exception is made if the duty is of a personal nature and performance by an assignee would vary materially from performance by the obligor. Calamari & Perillo, *supra* § 278; 3 Williston on Contracts, *supra* §§ 411, 411A. *See* 4 Corbin on Contracts § 867.

The duty of payment of the purchase price is not so personal in nature as to be a non-delegable duty, and the parties here did not contract to make it such.

As discussed in Issue Two, it is fundamental that, absent a novation, such a delegation does *not* relieve the assignor of his contractual liabilities.

Not surprisingly, this principle has been specifically held to apply to land sale

2. At the risk of repetition, we set forth the 1969 assignment which was, except for the change in parties, identical to the 1964 assignment:
ASSIGNMENT
February 1, 1969
This is to certify that for value received and subject to the consent of the owner of the property described in the within Conditional Sales Contract, the undersigned do here by sell, assign, transfer and set over unto Charles E. Roberts, Jr. all of his right, title and interest in and to the said Conditional Sales Contract.
/s/ MARK D. BATTIES
Mark D. Batties
ACCEPTANCE
February 1, 1969

The undersigned hereby accept the above assignment of the within Conditional Sales Contract and hereby expressly agree to be bound by all of the terms and conditions of said Conditional Sales Contract.
/s/ CHARLES E. ROBERTS JR.
Charles E. Roberts Jr.
CONSENT
February 1, 1969
The undersigned, owner of the property described in the within Conditional Sales Contract, hereby consents to the above assignments and acceptance there of.
/s/ MARCIA RAPP
Marcia Rapp

contracts. "[T]he assignment of a land contract does not extinguish the liability *of the vendee or any other assignor.*" (footnotes omitted, emphasis supplied) 77 Am.Jur.2d, *Vendor & Purchaser* § 392 at 536. *See Pope v. Vajen* (1889), 121 Ind. 317, 22 N.E. 308; *Kelso v. Fleming, supra*; 4 Corbin on Contracts, *supra* § 856 at 458. *See also Baltes Land, Stone & Oil Co. v. Sutton* (1903), 32 Ind.App. 14, 69 N.E. 179 (No. 4489); *Baltes Land, Stone & Oil Co. v. Spaulding* (1903), 32 Ind.App. 698, 69 N.E. 1134; *Baltes Land, Stone & Oil Co. v. Sutton* (1903), 32 Ind.App. 697, 69 N.E. 1134 (No. 4474); *Baltes Land, Stone & Oil Co. v. Sutton* (1903), 32 Ind.App. 697, 69 N.E. 1134 (No. 4475). (*Baltes Land, Stone & Oil* cases).

When a delegation (or assignment) of a duty is made under a land sale contract, a surety relationship is established between the vendee/assignor, who becomes the surety, and the assignee, who becomes the principal. *But this relationship is only between these parties*, and does not affect vendee's contractual obligations to the vendor. *Pope v. Vajen, supra; Kelso v. Fleming, supra. See* 4 Corbin on Contracts, *supra* § 866. This was explicitly recognized by our Supreme Court in *Kelso v. Fleming, supra*:

> That the assumption of the debt by Steen made him, as between himself and Fleming, primarily liable, is beyond question. *Birke v. Abbott*, 103 Ind. 1, 1 N.E. 485, and cases cited. It does not follow, however, that the original debtor was thereby released, or that the right of the holder of the note to proceed against him was in any manner affected. *Davis v. Hardy*, 76 Ind. 272; *Josselyn v. Edwards*, 57 Ind. 212.

104 Ind. at 181, 3 N.E. at 831.

As the vendee cannot unilaterally divorce himself from his contractual liabilities, he remains liable on the contract. This is so even though his assignee makes a subsequent assignment. *See Pope v. Vajen, supra; Baltes Land, Stone & Oil Co.* cases, *supra. See also* 77 Am.Jur.2d *Vendor & Purchaser* § 393.

So an original assignee is bound by the assignment (or delegation of duty) to perform a duty in the stead of the assignor, here Boswell and Snyder. Just as Boswell and Snyder had the right to delegate their duty of paying the contract price to Batties, he in turn had the same right to delegate that duty to a second assignee, Roberts. Batties' assignment to Roberts did not relieve him of his contractual liability to Boswell and Snyder to perform the duty of paying the purchase price.

This round robin of contractual liability theoretically could go on indefinitely, but does not alter the underlying contractual obligation of Boswell and Snyder.

We are in accord with Boswell and Snyder's assertion that since they occupy "substantially the position of suret[ies]," 4 Corbin on Contracts § 866 at 459, their obligation cannot be changed by a later agreement between the vendor and the assignee. Any such change, such as in the time or manner of payment, would discharge their obligation. *Pope v. Vajen, supra*; 4 Corbin on Contracts § 866. *See American States Ins. Co. v. Floyd I. Staub, Inc.* (1977), Ind.App., 370 N.E.2d 989; *White v. Household Finance Corp.* (1973), 158 Ind.App. 394, 302 N.E.2d 828.

This position was made clear by Prof. Corbin:

> Nor can the assignor escape from his own duty by assignment of it or by delegating its performance. . . . He remains bound by his original duty as before the assignment; but the obligor and the assignee cannot without his consent change the performance that he is bound to render or the conditions on which he is bound to render it. This is obviously sound doctrine, although the question has not often arisen and there is little case authority.
>
> This may be illustrated by the case of a bilateral contract for the future sale of goods or land. The buyer can assign his right to the goods or land and can delegate performance of his duty to pay the price. He himself remains bound as be-

fore by his duty to pay that price. But observe that he remains bound "as before"; the assignee and the seller cannot, by agreement or by waiver, make it the assignor's duty to pay a different price or on different conditions. If the seller is willing to make such a change, he must trust to the assignee alone.

4 Corbin on Contracts § 866 at 458.

The record before us yields no hint of a change in the obligation of Boswell and Snyder. The second assignment did not alter the amount of money owed nor the means nor time for payment. *See Pope v. Vajen, supra.* The assignment merely gave to Boswell and Snyder a new and added security in the form of Roberts. And no more. *See* 4 Corbin on Contracts, *supra* § 866.

If Boswell and Snyder had wished to make Batties' duty of payment non-delegable, or to condition it upon their consent to the delegation, they could have done so by appropriate language in the assignment. They did not do so. The obligation of Boswell and Snyder not having been altered by the assignment and consent thereto, they remained liable as a matter of law.

The trial court properly granted summary judgment.

Affirmed.

SULLIVAN and SHIELDS, JJ., concur.