Thomas J. DOWNING,
Plaintiff-Appellant,

v.

James DIAL, Nidrah Dial, Patricia Watkins, Dale Watkins and Martin Lane, Defendants-Appellees,

Archie Hunnicutt and Phyllis Hunnicutt, Third-Party Defendants-Appellees.

No. 1–680A159.

Court of Appeals of Indiana,
First District.

Sept. 22, 1981.

Rehearing Denied Nov. 9, 1981.

Michael V. Gooch, Harrison & Moberly, Indianapolis, for appellant.

Alan E. Yergin, Martin R. Shields, Yergin & Yergin, New Castle, for appellees.

## STATEMENT OF THE CASE

NEAL, Presiding Judge.

Plaintiff-appellant Thomas J. Downing (Downing) appeals from an adverse judgment rendered by the Henry Circuit Court in favor of defendants-appellees James Dial and Nidrah Dial (the Dials) in a contract action.

We affirm in part, and reverse in part.

## STATEMENT OF THE FACTS

On May 3, 1969, Downing entered into a conditional sale contract with the Dials wherein he agreed to sell to the latter certain personal property consisting of a business known as the Raintree Restaurant and Lounge. Included in the sale were inventory, furnishings, fixtures, equipment and other personal property utilized in the business, together with one-hundred shares of stock in Raintree, Inc., being all the stock in that corporation.

On October 28, 1970, with the consent of Downing as required by the contract, the Dials assigned the contract to Patricia Watkins. Later, Watkins assigned the contract to one Fitzgerald, and in that transaction Downing demanded and received, as a condition to his consent, an additional prepayment of $12,000 to enlarge his security. However, Watkins subsequently reassumed the payments, and eventually made yet another assignment to one Hunnicutt who made the payments on the contract until October 1, 1975, at which time the payments fell into default. On November 13, 1975, Downing gave the Dials notice of default as required by the contract.

The default led to this litigation commenced by Downing against the Dials and Watkins for the balance due on the contract. The trial court entered judgment for Downing and against Watkins for $18,-809.21. However, the trial court denied recovery against the Dials on the theory that the assignment by the Dials to Watkins effected a novation and released the Dials from their obligations under the contract. The sole issue raised by Downing is whether novation occurred.

Another issue, relative to the counterclaim of the Dials, arises out of the related contract for the sale of connected real estate between Downing and the Dials. In that contract, Downing had agreed to convey the real estate to the Dials when the balance due had been reduced to an amount equal to the balance of the mortgage indebtedness owed by Downing to a lending institution. At this balance point the Dials had agreed to assume that mortgage. The Dials tendered a payment which would have reduced the balance to the point requiring the conveyance, but Downing could not perform because the lending institution would not consent to the assumption of the mortgage by the Dials. The Dials then refinanced the whole transaction and paid Downing off, but, in so doing, were required to pay a higher rate of interest. On the counterclaim for breach of contract, the trial court awarded the Dials $12,006.12 damages. The sole issue arising out of the counterclaim is the issue of damages.

## ISSUES

Downing presents the following two issues for review:

I. Whether Downing's consent to the assignment of the contract operated as a novation to relieve the Dials from further obligations under the contract, and whether extrinsic matters outside the assignment and consent documents can be shown as evidence of novation; and

II. Whether the Dials incurred any damages by the breach of contract which was the subject of their counterclaim.

## DISCUSSION AND DECISION

*Issue I. Novation*

The contract contained the following section prohibiting assignment:

"19. This agreement shall in no manner be assigned or transferred by Buyers without written consent of Downing. . . ."

The assignment and consent executed by the parties on October 28, 1970, is:

## "ASSIGNMENT OF CONTRACT

WHEREAS, James Dial and Nidrah Dial (herein called Assignors), together with Patricia Watkins (herein called Assignee) are the purchasers from Thomas Downing and Martin Lane of the business known as the Raintree Restaurant and Lounge and of all the inventory, furniture, fixtures, furnishings and other equipment and personal property used in said business, together with all issued and outstanding shares of the capital stock of Raintree Inc., pursuant to a certain contract for conditional sale by and among said parties dated the 3rd day of May, 1969, and

WHEREAS: Assignee is desirous of having said Assignors assign all their right, title and interest in and to said business, property, capital stock and the contract of purchase aforementioned, to her; and

WHEREAS: Assignors are willing to make such assignment of interest to the Assignee.

NOW THEREFORE, in consideration of the premises and the mutual undertaking and agreement of the parties hereto and for a valuable consideration, receipt of which is hereby acknowledged, it is agreed as follows:

1. Assignors hereby assign all their right, title and interest in and to the business, property and capital stock and the contract of purchase aforementioned to the Assignee.

2. Assignee herewith agrees and undertakes to perform each and every obligation in said conditional sales contract specifically to be performed by Assignors and Assignee, the same as if Assignee were the sole original purchasing party under said contract.

3. In consideration of the Assignee assuming the obligation imposed upon Assignors and Assignee pursuant to the aforementioned conditional sales contract, Thomas Downing and Martin Lane, sellers in said contract do herewith consent to the assignment of said contract by Assignors to Assignee.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals this 28th day of October, 1970.

| /s/ James Dial | /s/ Thomas Downing |
|---|---|
| James Dial | Thomas Downing |
| /s/ Nidrah Dial | /s/ Martin Lane |
| Nidrah Dial | Martin Lane |

/s/ Patricia Watkins
Patricia Watkins"

The trial court's memorandum accompanying the judgment, which we paraphrase for brevity, stated that intent, a vital element of novation, can be shown by specific agreement or by circumstances surrounding the assumption of the obligation by the new debtor. It stated that although the assignment does not contain a specific provision wherein Downing was to look solely to Watkins, when the subsequent circumstances are examined in connection with the language in paragraph 2 of the assignment as follows ". . . the same as if assignee were

the sole original purchasing party under the contract" it is the trial court's conclusion that a novation occurred and the Dials were released. The subsequent circumstances mentioned by the court were as follows:

"1. Downing did not look to Dial and Dial for payment until default of the contract subsequent to the October 1975 failure of payment.

2. Downing agreed to subsequent assignments of the contract.

3. At the time of the assignment of the contract to Fitzgerald from Watkins, Downing requested and received $12,000 to increase the security."

We are of the opinion that the case of *Boswell v. Lyon*, (1980) Ind.App., 401 N.E.2d 735, transfer denied, handed down after the decision in this case, is controlling. *See also White Truck Sales of Indianapolis v. Shelby National Bank of Shelbyville*, (1981) Ind.App., 420 N.E.2d 1266. In *Boswell*, Judge Buchanan carefully reviewed the law on novation, and the construction of instruments in connection therewith. His summation bears repeating here:

"A novation simply means the substitution of one debtor for another by mutual agreement of the parties. *Kelso v. Fleming* (1885), 104 Ind. 180, 3 N.E. 830 . . . .

Only if a party has agreed to a substitution in the place of the other party is that other party relieved of liability. *Navin v. New Colonial Hotel, Inc.* (1950), 228 Ind. 128, 90 N.E.2d 128 . . . .

\* \* \* \* \* \*

[N]ovation consists of four elements: there must be an existing valid contract . . . all parties must agree to a new contract; the old contract must be extinguished by the new contract; and the new contract must be valid. *Indianapolis Morris Plan Corporation v. McAtee* (1955), 125 Ind.App. 372, 125 N.E.2d 261.

Whether a novation has occurred is a matter of the intent of the parties. 58 Am.Jur.2d *Novation* § 20 . . . . However, the issue of novation presents an issue of fact only if the agreement is equivocal or uncertain; when the agreement is unequivocal, the existence of a novation is a question of law. 58 Am.Jur.2d *Novation* § 20.

In construing assignment agreements, the general rules of contract interpretation apply. 3 I.L.E. Assignments § 41. This means that if the language of the agreement is plain and clear, its interpretations is a matter of law. *Wilson v. Kauffman* (1973), 156 Ind.App. 307, 296 N.E.2d 432. The court will look to the contract language as expressing the intent of the parties. *Colonial Mortgage Co. of Indiana v. Windmiller* (1978), Ind. App., 376 N.E.2d 529; *Board of Directors, Ben Davis Conservancy Dist. v. Cloverleaf Farms, Inc.* (1977), Ind.App., 359 N.E.2d 546. Only if the language is ambiguous may extrinsic evidence be used to determine the parties' intent; *Huntington Mut. Ins. Co. v. Walton [Walker]* (1979), Ind.App., 392 N.E.2d 1182; *Wilson v. Kauffman, supra.* A word or phrase is ambiguous if reasonable men could differ as to its meaning. *Colonial Mortgage Co. of Indiana v. Windmiller, supra; Board of Directors, Ben Davis Conservancy Dist. of Cloverleaf Farms, Inc., supra.*

\* \* \* \* \* \*

Something more than the use of the term 'assignment' must be present to create a material issue of fact as to the existence of a novation. Likewise, the mere consent of the creditor to the assignment does not create an issue as to novation. *See Ingalls Iron Works Co. v. Fruehauf Corp.* (5th Cir. 1975) 518 F.2d 966; *Smith v. Wrehe* (1978), 199 Neb. 753, 261 N.W.2d 620; *Moring v. Miller* (1976), Fla.App., 330 So.2d 93.

In *Smith v. Wrehe, supra,* the Nebraska Supreme Court succinctly summarized the law:

'It is elementary that a contracting party cannot, by an assignment of the contract, relieve himself of the obligations thereunder, even where the contract is expressly made assignable and contains a provision that it is binding on the assignee of a party. Accordingly, *except where a party to the contract*

*expressly agrees to accept the responsibility of the other party's assignee* in the stead and place of that of the assignor, making a new contract by way of novation, *the assignor remains bound by his obligations* under the contract and is liable if the assignee defaults.' (emphasis added)"

401 N.E.2d at 741–743.

■ With the principle in mind that only where the language of the instrument is ambiguous may extrinsic evidence be used to determine the parties' intent, we examine the assignment and consent. We are unable to find in the document Downing's express agreement "to accept the responsibility of the other party's [the Dials] assignee [Watkins] in the stead and place of the assignor [the Dials]." Under facts very similar to these, in *Boswell*, Judge Buchanan stated:

"The document before us assigned the rights and interests of Boswell and Snyder, and delegated contractual obligations to Batties and no more. The agreement did not mention novation, relieving of contractual liabilities, substitutions of parties to the contract, or extinguishing the old contract. Without some such indicator, we cannot conclude that this assignment was equivocal or uncertain or that a novation could have been in any way intended.

Something more than the use of the term 'assignment' must be present to create a material issue of fact as to the existence of a novation." (Citations omitted.)

401 N.E.2d 742.

■ The Dials attempt to distinguish the facts in *Boswell* from the facts at hand. Paragraph 2 of the assignment states:

"Assignee herewith agrees and undertakes to perform each and every obligation in said conditional sales contract specifically to be performed by Assignors and Assignee, the same as if Assignee were the sole original purchasing party under the contract."

The Dials argue that the language in paragraph 2 renders the meaning of the instrument uncertain and equivocal as to novation and thus creates an issue of fact. Therefore, extrinsic evidence is admissible of subsequent events to demonstrate the intent of the parties that a novation occurred, and that the Dials would be released. We disagree.

First, it was not disclosed in the trial court's memorandum nor in the brief of the Dials why those enumerated subsequent events bear any logical relation to any intent of novation. Downing had no right to reenter or look to the Dials for payment until default. After default, he promptly gave notice to the Dials and made demand for payment. Therefore, the fact that he did not "look to the Dials" is meaningless. Subsequent assignments existed in *Boswell*, and the holding of that case clearly disclosed that such subsequent assignments created no suggestion of novation nor an issue of fact. We, likewise, fail to perceive why Downing's demand for an additional $12,000 prepayment to enlarge his security was evidence of novation and release of the Dials. As a matter of fact, the implication seems quite the contrary. If Downing was anxious about his security, he certainly would not release the Dials who, as assignors, stood in the position of guarantors.

However, we are of the opinion that, in accord with *Boswell, supra*, and the cases cited therein, we need not and should not look beyond the language of the assignment itself. The language is clear and unequivocal. No novation occurred, nor were the Dials released. The assignment is essentially a two-party contract wherein the Dials are selling their interest in the Raintree Restaurant and Lounge to Watkins, which transaction requires Downing's consent. In paragraph 1, the Dials simply assign their interest to Watkins. In paragraph 2, Watkins agrees to perform the contractual obligations "specifically to be performed by Assignors and Assignee, the same as if Assignee were the sole party under said contract." In paragraph 3, the only place in the instrument where Downing is mentioned, it is stated that " . . . sellers in said

contract do herewith consent to the assignment of said contract by Assignors to Assignee." This is all they did. Paragraph 2, which is challenged as being equivocal and uncertain, reiterates the joint obligation of "Assignors and Assignee" that assignee bound herself to accept.

In any event, we find, as in *Boswell*, no mention of: novation, a provision relieving the Dials of their contractual obligation, a substitution of parties, any extinguishment of the old contract. Like Judge Buchanan in *Boswell*, we cannot conclude that this assignment was equivocal or uncertain, or that a novation in any way could have been intended. We are compelled to observe that all documents relevant to this and related inquiries apparently were drawn by a lawyer or lawyers. This business was substantial, and a great deal of money was involved. The parties and their counsel appear experienced. If the parties and their attorneys had desired a novation and release, they certainly could have inserted it in the document. They did not, and such omission is meaningful.

This cause is reversed on this issue.

*Issue II. Damages on counterclaim*

The rate of interest on Downing's mortgage and note that the parties contemplated the Dials would assume was 6.5 percent. Upon refinancing, the Dials were obligated to pay 8 percent. The Dials filed a counterclaim against Downing for breach of contract and the court awarded damages in the amount of $12,006.12. On appeal, Downing challenges only the correctness of the damages.

Downing correctly shows that the measure of damages in a breach of contract case is the loss actually suffered by the breach, and a plaintiff is not entitled to be placed in a better position than he would have been had the breach not occurred. *Jay Clutter Custom Digging v. English* (1979) Ind.App., 393 N.E.2d 230. In a breach of contract to loan money, the measure of damages is the difference, if any, between the interest he contracted to pay and what he was compelled to pay to procure the money. *Lowe v. Turpie*, (1896) 147 Ind. 652, 44 N.E. 25.

Downing, by an analysis of the facts, demonstrates that his Citizens Federal note and mortgage ran for 87 months, while the new mortgage ran for only 60 months. The total monthly payment including interest on his mortgage was $2,100, while the monthly payment on the new mortgage was $3,041.49. He then seems to argue that because of the increased and accelerated payments over a shorter time, less dollar amount interest would accrue at 8 percent under the new mortgage than would accrue at 6.5 percent under the old. Therefore, he concludes, the Dials were not damaged. This fallacious argument omits the element of loss of use of the money applied by the Dials to the increased and accelerated payments.

Downing has presented no alternate calculations in his brief, nor did he present any evidence on this issue at trial. The Dials, however, presented a bank officer who made certain calculations upon which the trial court apparently made its decision. Our own primitive calculations do not disclose any gross error in the trial court's decision. The burden is upon Downing to demonstrate error and this he has not done. *City of Fort Wayne v. Bishop* (1950) 228 Ind. 304, 92 N.E.2d 544; *State Board of Tax Commissioners v. Oliverius*, (1973) 156 Ind. App. 46, 294 N.E.2d 646.

The judgment on the counterclaim is ordered affirmed; however, as we have stated under Issue I, this cause is reversed on the issue of novation.

ROBERTSON, J., and YOUNG, J. (participating by designation), concur.