**John R. STEENHOVEN, Defendant-Appellant,**

v.

**The COLLEGE LIFE INSURANCE COMPANY OF AMERICA, Plaintiff-Appellee.**

No. 2–783A254.

Court of Appeals of Indiana, Second District.

March 8, 1984.

Transfer Denied May 30, 1984.

Stephen A. Harlow, Maribelle G. Harlow, Harlow, Wright & Englert, P.C., Indianapolis, for defendant-appellant.

Terrill D. Albright, James H. Ham, III, Paula F. Cardoza, Baker & Daniels, Indianapolis, Joseph T. Bumbleburg, Ball, Eggleston, Bumbleburg & McBride, Lafayette, for plaintiff-appellee.

ON PETITION FOR REHEARING

RATLIFF, Judge, writing by designation.

On appeal, this court reversed a portion of the grant of a preliminary injunction issued by the Tippecanoe Superior Court. That court enjoined appellant John Steenhoven from contacting past or present clients regarding replacement of College Life insurance policies and from actually attempting to induce such replacement. Steenhoven was also required to return certain materials to College Life. While upholding the court's order requiring the return of College Life's materials, this court reversed the preliminary injunction as to contacting clients or inducing replacements. College Life now petitions for rehearing, arguing as its single issue that because policyholder lists are not readily

ascertainable from the policyholders themselves,[1] such lists must be trade secrets within the meaning of the Uniform Trade Secrets Act.[2] Although we agree with College Life's premise that policyholder lists are not readily ascertainable from the policyholders themselves, we are, nevertheless, unable to conclude that the policyholder list in the instant case is a trade secret under the act.

Appellee correctly notes that "[a]ctual or threatened misappropriation [of a trade secret] may be enjoined." Ind.Code § 24–2–3–3 (1982). Misappropriation includes the "use of a trade secret of another without express or implied consent by a person who ... at the time of ... use, knew or had reason to know that his knowledge of the trade secret was ... acquired under circumstances giving rise to a duty to ... limit its use ...." Ind.Code § 24–2–3–2(2)(B)(ii) (1982).[3] As we noted in our prior opinion, a trade secret encompasses

"information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

Ind.Code § 24–2–3–2. College Life contends that policyholder lists are compilations within the meaning of the act. Even if we accept appellee's contention, however, we do not reach the conclusion that the policyholder list is a trade secret. In order to be considered a trade secret under the act, the information at issue must be imbued with a certain "independent economic value ... from not being generally known." *Id.* No such inherent independent value can be ascribed to this list of policyholders' names and addresses,[4] even if such list is placed in the hands of a rival insurance organization.[5] Alone it is effectively worthless.[6] Lacking independent

---

1. Our prior opinion in this case held that certain policyholder information could not be considered a trade secret under the Uniform Trade Secrets Act because such information was readily ascertainable from the policyholders themselves.

2. Ind.Code §§ 24–2–3–1 to –8 (1982).

3. While the statute is also drawn in terms of disclosure of a trade secret, appellee's argument clearly addresses Steenhoven's alleged improper use.

4. Steenhoven dealt with, and had knowledge of, only a small portion of College Life's total customer list—namely, those College Life policyholders he himself serviced in the Lafayette, Indiana area.

5. Appellee argues that our decision "effectively deprives every policyholder list or customer list of 'trade secret' status under the Uniform Act in Indiana." Appellee's Petition for Rehearing at 5. We refuse to paint with such a broad brush, however. Rather, we merely conclude that, *in the instant case,* we do not consider the policyholder list to be a trade secret within the meaning of the act.

This is not to say that every customer list would be denied trade secret status under the uniform act. We are well aware, for example,

that in certain sectors of the business community identical or nearly identical products and/or services are sold to a small, fixed group of purchasers. In such an intensely purchaser-oriented market, a supplier's customer list could well constitute a trade secret. However, as regards the instant case, we note that personal insurance is sold to a wide group of purchasers and sold in a great variety of policy combinations based upon individual policyholders' needs. Given this, we cannot say that the names of the policyholders Steenhoven dealt with are such as to inherently assume trade secret status under the act.

6. College Life contends that the policyholder list assumes some potential value when viewed together with certain policyholder information. In our prior opinion, we concluded that such policyholder information could not be considered a trade secret pursuant to the act because it was readily ascertainable from the policyholders themselves. We also note that College Life had acknowledged such information was readily available from other sources. *See Steenhoven v. College Life Insurance Co. of America,* (Ind.App.1984) 458 N.E.2d 661, at 666 n. 14. This is the same information that could be extracted from the policyholder in a blind replacement attempt. Since the blind attempt would result in the same information being compiled as would an approach based upon the

economic value in the hands of another, we cannot say that such a list would constitute a trade secret within the meaning of the Uniform Trade Secrets Act. Accordingly, appellee's petition for rehearing is denied.[7]

Petition denied.

SHIELDS, J., and MILLER, J. (by designation), concur.

customer list—*i.e.,* that the policyholder was a College Life policyholder whose policy provided for certain specific coverages at certain prices—we fail to see how a combination of the readily available policyholder information and the policyholder list would be imbued with such independent economic value as to constitute a trade secret under the act.

**7.** The real thrust of appellee's argument is not that Steenhoven disclosed College Life's customer list (at least as concerns his limited knowledge thereof), but rather, that Steenhoven used such list to benefit economically. College Life seemingly seeks not to protect a trade secret, but rather, to prevent competition by its former agent. Insofar as College Life attempts to merely restrain Steenhoven's competition, we believe the Uniform Trade Secrets Act to be an improper vehicle therefor. The fact that Steenhoven possesses certain knowledge acquired within the course of his employment does not mandate that, upon his departure, Steenhoven must wipe clean the slate of his memory. Rather, it is clear from the language of the act that the Uniform Trade Secrets Act was promulgated by the legislature to prevent the abusive and destructive usurpation of certain economically-imbued business knowledge commonly referred to as trade secrets. We do not believe the legislature ever intended the statute's provisions to act as a blanket *post facto* restraint on trade. If College Life had desired to prevent competition by its former agents based upon the agents' acquired knowledge, it could have done so contractually via the provisions of a covenant not to compete. Having forgone that possibility, we believe it misguided to attempt to stem such competition by arguing, in essence, that properly-acquired knowledge of the employer's business is automatically made a trade secret pursuant to the act, without regard to the nature of the information, simply because it can be compiled into a table or a list.