**J.E. STONE TREE SERVICE, INC.,**
**Appellant–Defendant,**

v.

**Thad BOLGER and Tamera Bolger,**
**Appellees–Plaintiffs.**

**No. 64A03–0412–CV–551.**

Court of Appeals of Indiana.

July 22, 2005.

Charles F.G. Parkinson, Harris Welsh & Lukmann, Chesterton, for Appellant.

D. Eric Neff, Crown Point, for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant J.E. Stone Tree Service, Inc. ("Stone") appeals a judgment in favor of Appellees–Plaintiffs Thad Bolger and Tamera Bolger (collectively, "the Bolgers") upon the Bolgers' breach of contract claims. We affirm in part, reverse in part, and remand with instructions.

### Issues

Stone presents three issues for review:

I. Whether Stone is entitled to summary judgment on the breach of oral and written contract claims;

II. Whether Stone is entitled to judgment on the evidence; and

III. Whether the damages award is excessive.

### Facts and Procedural History

Stone is an Indiana corporation providing tree service and snow removal. Thad Bolger, who was once employed by Stone, and his wife, Tamera Bolger, decided to purchase certain assets of Stone, and conduct business as Ironwolf Tree Service. On July 30, 1999, the Bolgers signed a document entitled "Purchaser's Assignment of Option," which provides in part "Snow plowing contracts go with equipment. All work orders on board go with equipment." (App.397.)

On August 14, 1999, Stone and the Bolgers executed an "Offer to Purchase Personal Property" ("the Contract"). (App.40.) Exhibit A to the Contract provides that the Bolgers purchased, for the sum of $141,000.00,[1] certain items of personal property: (1) a 1979 Ford F7000 with a snorkel; (2) a 1991 International with a chip box; (3) a 1997 Vermeer chipper; (4) a 1996 Rayco chipper; (5) a 1977 Mack with log loader; (6) miscellaneous tools; (7) radios; (8) a 1988 Chevy pickup with a snow plow; and (9) a plywood trailer.

Exhibit B to the Contract provides as follows:

Good-will is itemized as follows:

1. J.E. Stone will advise as needed.

2. Purchaser has use of repair shop and tools for one year from purchase date.

3. All repair books and maintenance records go with equipment.

4. Purchaser has rights to residential tree service and snow plowing accounts.

5. Purchaser has rights to all jobs on the board at time of said purchase.

6. Purchaser will retain phone number permanently.

7. Purchaser will retain name for a said time to be determined at a later date.

(App.44.) The parties verbally agreed to perform some work jointly during the following year and split the proceeds. They also verbally agreed that the Bolgers would purchase additional equipment from Stone after one year.

---

1. Although the Contract recited a purchase price of $141,000.00, the Bolgers paid Stone $112,000.00. By agreement of the parties, the contract price was inflated so that the Bolgers could borrow $141,000.00 as a Small

Business Administration guaranteed loan, and use the excess funds as working capital. According to Tamera Bolger's testimony, a Small Business Administration appraiser appraised the equipment at $141,000.00.

The Bolgers, initially doing business as J.E. Stone Tree Service and later doing business as Ironwolf Tree Service, were to retain the telephone number previously assigned to Stone by GTE. However, GTE, which also provided directory advertising, sold on an annual basis, conditioned retention of the telephone number upon the payment of outstanding charges including directory advertising. Stone had previously executed, in March of 1999, an annual contract with GTE for directory advertising, and, according to the Bolgers, Stone verbally agreed to pay for said advertising. At some point, Tamera Bolger and Stone executed a written transfer agreement regarding telephone service, but the transfer agreement was not delivered to GTE.

On April 11, 2001, the Bolgers filed a four-count complaint against Stone, alleging breach of contract and fraud.[2] Count I alleged that Stone failed to pay $15,939.87 to GTE for advertising, forcing the Bolgers to pay GTE in order to retain the use of the telephone number previously assigned to Stone. Count II alleged that Stone breached the Contract provision regarding the Bolgers' receipt of "all of the existing snow removal contracts which were on the board as of September 1, 1999." (App.36.) Count III alleged that Stone failed to give the Bolgers an accounting of sums due for work jointly performed. Count IV alleged Stone induced the Bolgers' purchase by fraudulently misrepresenting "the gross revenues of the residential and snow plowing business." (App.38.) Stone filed a counterclaim seeking $29,000.00, representing the difference between the Contract price and the actual price paid.

On June 13, 2002, Stone filed a motion for summary judgment. On August 19, 2002, the trial court conducted a summary judgment hearing. On October 25, 2002, the trial court granted summary judgment to Stone on Counts III and IV of the complaint, but refused to grant summary judgment to Stone on Counts I and II. A jury trial commenced on July 12, 2004. At the conclusion of the Bolgers' case-in-chief, and at the conclusion of the presentation of evidence, Stone moved for judgment on the evidence. The motions were denied. The jury returned a verdict in favor of the Bolgers, awarding them $190,321.24. The trial court entered judgment upon the verdict.

On August 12, 2004, Stone filed a motion to correct error, requesting that the trial court set aside the jury verdict. Alternatively, Stone sought a new trial on the issue of damages. The trial court conducted hearings on November 8, 2004 and on November 15, 2004 and denied Stone's motion to correct error. Stone now appeals.

**Discussion and Decision**

*I.   Motion for Summary Judgment*

*A.   Standard of Review*

Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. On review of a trial court's grant or denial of summary judgment, this Court applies the same standard as the trial court. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind.Ct.App.1999). We must determine whether there is a genuine issue of material fact requiring trial, and whether the moving party is

---

2.  The complaint indicated that the plaintiff was Bolger Enterprises, Inc. d/b/a Ironwolf Tree Service. However, Thad Bolger and Tamera Bolger were subsequently substituted as the plaintiffs. The complaint also named J.E. Stone, individually, as a defendant. However, he was dismissed as a defendant prior to trial.

entitled to judgment as a matter of law. *Id.* Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Id.; see also* Ind. Trial Rule 56(C), (H).

A party seeking summary judgment bears the burden to make a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *Am. Mgmt., Inc. v. MIF Realty L.P.,* 666 N.E.2d 424, 428 (Ind.Ct.App.1996). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the nonmoving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Id.* The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Shambaugh & Son, Inc. v. Carlisle,* 763 N.E.2d 459, 461 (Ind.2002).

On appeal, we will assess the trial court's decision to ensure that the parties were not improperly denied their day in court. *Id.* A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Cansler v. Mills,* 765 N.E.2d 698, 701 (Ind.Ct.App. 2002), *trans. denied.*

### B. Analysis

The first allegation of the Bolgers' complaint concerns Stone's alleged breach of an oral agreement to pay GTE for advertising expenses. The second allegation concerns Stone's alleged breach of the Contract by failing to transfer to the Bolgers some of the accounts described as "jobs on the board," specifically, commercial snow removal accounts. Stone contends that it is entitled to judgment as a matter of law on Count I because Stone and Tamera Bolger signed a transfer agreement that, according to Stone, amounted to a novation. Stone contends that it is entitled to judgment as a matter of law on Count II because the Contract did not include any commercial snow removal accounts.

■ The cardinal rule of contract interpretation is to ascertain the parties' intent from their outward manifestation of it. *Centennial Mortg., Inc. v. Blumenfeld,* 745 N.E.2d 268, 277 (Ind.Ct.App.2001). If the trial court determines, as a matter of law, that a contract is unambiguous, it must give effect to the intentions of the parties as expressed within the four corners of the document. *Art Country Squire, LLC v. Inland Mortgage Corp.,* 745 N.E.2d 885, 889 (Ind.Ct.App.2001). The meaning of a contract is to be determined from an examination of all of its provisions. *Id.* In the absence of anything to indicate a contrary intention, we will consider writings executed at the same time and relating to the same transaction. *Id.*

Stone argues that the trial court need only have considered the written agreements executed by the parties in order to ascertain the absence of a material factual dispute. We disagree. Construing the facts in the light most favorable to the Bolgers as non-movants, the parties had various agreements beyond those reduced to writing. Their transactions were not limited to the subject matter of the Contract, i.e., the personal property sold. It is undisputed that the parties did not conclude their dealing with a sale of assets, but engaged in joint efforts to provide services to certain customers after the execution of the Contract, with proceeds and expenses to be divided.

▮ The designated materials indicate that Stone, which contracted with GTE for directory advertising on an annual basis, incurred charges before the asset sale. Moreover, the facts most favorable to the Bolgers indicate that Stone was benefited by the directory advertisement, even after the asset sale, and agreed to pay GTE, permitting the Bolgers to have an unencumbered telephone number assignment. Stone admittedly did not pay for the advertising, but claimed that Tamera Bolger's execution of the telephone transfer agreement, never delivered to GTE, operated as a novation. A novation occurs when (1) there is a valid contract; (2) all parties agree to a new contract; (3) the old contract is extinguished by the new contract; and (4) the new contract is valid. *Boswell v. Lyon*, 401 N.E.2d 735, 741 (Ind. Ct.App.1980). A novation does not occur unless all parties agree and the old contract is extinguished. *Id.* In other words, without the acquiescence of the creditor, one cannot simply transfer its indebtedness to another. *Id.*

▮ Here, GTE was not a party to any agreements between Stone and the Bolgers. GTE billed Stone for services for which Stone had contracted with GTE, but disconnected the telephone after the bill for advertising became delinquent. The Bolgers were compelled to pay $15,922.20, representing delinquent advertising charges, to GTE to retain their assigned telephone number. Stone received consideration for which it did not pay, under circumstances where a business entity would be expected to pay, as Stone solely benefited from the advertising prior to the Contract, and jointly benefited during the joint business venture.[3] The Bolgers claimed that Stone did, in fact, promise to

pay for advertising. A factfinder could conclude that Stone promised to make payment and breached the promise. Thus, the trial court could not conclude as a matter of law that Stone did not breach an oral contract with the Bolgers regarding the payment of advertising expenses.

▮ The Bolgers' claim with respect to the Contract terms is that Stone denied them some of the "jobs on the board" to which they were contractually entitled; specifically, the commercial snow removal accounts. The designated materials indicate that Stone held four types of accounts: commercial tree service, residential tree service, commercial snow removal and residential snow removal. Some of the commercial snow removal customers required spreading of salt, and some did not. Stone insists that the plain language of the Contract contemplates only the transfer of residential accounts of any type. Stone further argues that the Bolgers could not have reasonably expected the commercial accounts because they lacked the equipment to adequately service those accounts, as they purchased only one piece of equipment with a snowplow and no equipment with a salt spreader.

Here, the Contract assigns values to the various items of personal property, aggregating to $141,000.00, with no value assigned to any account. The Contract does not include a list of customers or specify which categories of accounts of those "on the board," if less than all, were to be transferred to the Bolgers. However, the Option document provides that accounts go with equipment. Moreover, Thad Bolger's deposition testimony is consistent with the exclusion of commercial snow removal accounts from the Contract.

---

3. The Yellow Pages advertisement depicted in Plaintiffs' Exhibit 10 lists the proprietor as "J.E. Stone" and indicates that "residential and commercial" tree services are offered. (Appellees' App. 73.)

In his deposition, Thad Bolger testified as follows:

Question: [A]re there any specific customers listed?

Thad: No, there are no specific customers.

Question: At any time did Mr. Stone tell you what customers would be included in this sale?

Thad: No, he just referenced all snow plow accounts.

Question: Did you know whether he meant residential snow plow accounts or commercial snow plow accounts?

Thad: No, he didn't specifically say residential or commercial, but there was [sic] only three residential accounts that were minimal, minimal, just nothing really.

Question: How would you perform the work for the commercial snow plowing accounts without the equipment?

Thad: Well, like I had said, we had planned to purchase it the following summer.

Question: Okay. But that wasn't a part of this agreement, was it?

Thad: No, it was not.

(App.81.) The parties agreed that the assets transferred pursuant to the Contract did not include Stone's commercial snow removal equipment. The Bolgers were not otherwise equipped to perform commercial snow removal including salt spreading upon their execution of the Contract. The additional purchase of equipment from Stone, although contemplated by the parties' verbal agreement, did not take place. A factfinder could only conclude that the Contract contemplated transfer of less than all accounts held by Stone. Accordingly, there was no breach by Stone for failure to transfer all commercial accounts.[4]

■ Additionally, we observe that Stone was not obligated by a covenant not to compete, and that the Contract did not assign a particular monetary value to any account. Moreover, the clients were at-will clients, not clients from whom Stone or the Bolgers could expect to recover ongoing profits based upon a contractual relationship. As such, even if Stone breached the Contract by failure to transfer accounts, the Contract would not support an award of monetary damages. The parties agreed that the equipment alone was worth $141,000.00, an amount exceeding the actual purchase price, apparently to support a falsified document to secure a small business loan. Stone transferred the equipment, giving the Bolgers the full stated value of the Contract. Where there is no dispute in the evidence and the factfinder could reach only one conclusion, summary judgment is appropriate. *Coffman v. PSI Energy, Inc.*, 815 N.E.2d 522, 527 (Ind.Ct.App.2004).

In light of the foregoing, the trial court properly denied Stone's motion for summary judgment on Count I (breach of oral contract for payment of expenses) but erroneously denied Stone's motion for summary judgment on Count II (breach of written contract).[5]

## II. Judgment on the Evidence

■ Stone claims it is entitled to judgment on the evidence because the jury's verdict is contrary to law. The standard of review for a challenge to a ruling on a motion for judgment on the

---

**4.** Stone allowed the Bolgers to service some accounts that could be classified as "commercial." However, these customers did not require the spreading of salt.

**5.** The grant of summary judgment on Counts III and IV is not challenged on appeal.

evidence is the same as the standard governing the trial court in making its decision. *Smith v. Baxter*, 796 N.E.2d 242, 243 (Ind.2003). Judgment on the evidence is proper where all or some of the issues are not supported by sufficient evidence. *Id.* The Court looks only to the evidence and the reasonable inferences drawn most favorable to the nonmoving party, and the motion should be granted only where there is no substantial evidence supporting an essential issue in the case. *Id.* If there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper. *Id.* When the trial court refuses to set aside the jury verdict, it is not the province of an appellate court to do so "unless the verdict is wholly unwarranted under the law and the evidence." *Paragon Family Restaurant v. Bartolini*, 799 N.E.2d 1048, 1056 (Ind. 2003). We have concluded that only Count I should have been submitted to the jury. Accordingly, our review of the evidence focuses upon the evidence relative to the breach of oral contract claim.

At trial, the Bolgers testified that Stone agreed to pay GTE for advertising expenses. The jury heard evidence that Stone contracted for directory advertising, on an annual basis, several months before execution of the Contract, and that Stone and the Bolgers agreed to combine their efforts to serve customers jointly for one year following the execution of the Contract. According to Thad Bolger's testimony, the Bolgers were to supply the employees and Stone was to supply the trucks. The proceeds were to be split 50/50. The Count I verdict, requiring Stone to pay for advertising initially procured by Stone, and benefiting Stone even after the asset sale, is not wholly unwarranted under the law and the evidence.

Accordingly, Stone is not entitled to judgment on the evidence.

### III. Damages Amount

■■■■ Stone contends that the $190,321.24 award of damages is excessive and based upon speculation. Our review of an award of damages is limited. We do not reweigh the evidence or judge the credibility of witnesses, and we will consider only the evidence favorable to the award. *Abbey Villas Dev. Corp. v. Site Contractors, Inc.*, 716 N.E.2d 91, 101 (Ind. Ct.App.1999), *trans. denied.* A damage award must be supported by probative evidence and cannot be based upon mere speculation, conjecture, or surmise. *Id.*

The major portion of this award is to compensate the Bolgers for lost profits for commercial snow removal accounts. In light of our summary judgment discussion, these accounts were not part of the Contract and the Bolgers are not entitled to lost profits on these accounts. However, there is probative evidence to support the jury's conclusion that the Bolgers are entitled to recover advertising expenses. The evidence supports an award of $15,922.20 [6] for delinquent advertising expenses incurred by Stone. Accordingly, we instruct the trial court, on remand, to enter judgment in favor of the Bolgers in that amount.

Affirmed in part; reversed in part; and remanded with instructions.

FRIEDLANDER, J., and ROBB, J., concur.

---

**6.** Plaintiffs' Exhibit 8, a GTE bill, indicates that a total of $15,939.87 was due GTE, of which $17.67 was for "basic charges" and $15,922.20 was for directory advertising.