

**FILED**
Apr 14 2015, 9:49 am
*Kevin S. Smith*
**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

William C. Wagner
Geoffrey Slaughter
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

Brian N. Custy
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

F. Joseph Jaskowiak
Lauren K. Kroeger
Hoeppner Wagner & Evans LLP
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Think Tank Software
Development Corporation,
d/b/a Think Tank Networking
Technologies Group and Think
Tank Information Systems,

*Appellant-Plaintiff,*

v.

Chester, Inc., Mike Heinhold,
John Mario, Joel Parker,
Thomas Guelinas, Jon Meyer,
Daniel Curry, Eric M.
Wojciechoswki, Michael Gee,
Philip Ryan Turner and Carl
Zuhl,

*Appellees-Defendants*

April 14, 2015

Court of Appeals Case No.
64A03-1404-PL-134

Appeal from the Porter Superior
Court.
The Honorable William E. Alexa,
Special Judge.
Cause No. 64D05-0205-PL-3861

**Baker, Judge.**

Think Tank Software Development Corporation d/b/a Think Tank Networking Technologies Group and Think Tank Information Systems ("Think Tank") appeals the trial court's directed verdict in favor of Defendants– Appellees Chester, Inc. (Chester); Mike Heinhold (Heinhold); John M. Mario (Mario); Joel E. Parker (Parker); Thomas Guelinas (Guelinas); Jon Meyer (Meyer); Daniel B. Curry (Curry); Eric M. Wojciechowski (Wojciechowski); Michael Gee (Gee); Philip Ryan Turner (Turner); and Carl Zuhl (Zuhl) (collectively, the defendants) on Think Tank's claim for misappropriation of trade secrets. In addition, Think Tank appeals the trial court's determination that its non-solicitation claim was barred. Finding that the trial court did not err in granting a directed verdict and correctly determined that Think Tank's non-solicitation claim was barred, we affirm the judgment of the trial court.

# Facts[1]

The relevant facts of this case have been relayed in prior decisions in this case as follows:

> Think Tank is engaged in computer-related business activities, including systems and network engineering, problem solving, systems design, implementation, sales, client training, and computer maintenance. As of April 19, 2001, Think Tank employed defendants

---

[1] We heard oral argument on March 18, 2014, in the courtroom of the Indiana Court of Appeals in Indianapolis. We thank counsel for their informative and illustrative oral advocacy.

Mario, Parker, Guelinas, Meyer, Curry, Wojciechowski, Gee, Turner, and Zuhl (collectively, the former employees).

. . . .

During a period ranging from April 20, 2001, to April 19, 2002, all of the former employees left Think Tank for various reasons, shrinking Think Tank's staff from sixteen to nine employees. With the exception of Parker, all of the former employees went directly from Think Tank to Chester. [Parker worked for another employer for five months before going to work for Chester.] Chester was informed of the covenant not to compete by Curry, Gee, Guelinas, Wojciechowski, and Zuhl. However, Mario, Parker, Meyer, and Turner did not believe they had signed the covenant when they were hired by Think Tank, and Think Tank could not produce the signed agreements. Think Tank's president asserts that each of these four signed the covenant in his presence.

On April 26, 2002, Think Tank filed its "Verified Complaint For Injunctive And Other Relief" against Chester; Chester's manager, Heinhold; and the former employees. Among other things, Think Tank alleged in its complaint that its former employees were violating the covenant not to compete by contacting Think Tank personnel and customers.[2] Think Tank further alleged that Chester, Heinhold, and the former employees were interfering with Think Tank's business by divulging confidential information and trade secrets. Three days later, after an ex parte emergency hearing, a Lake Superior Court granted a temporary restraining order finding that Think Tank had "a protectable interest in its goodwill (which includes all its customer information and relationships as well as its employees) and reputation...." The court further found that "the provisions of [the covenant] provide reasonable and appropriate restrictions on post-employment conduct of [Think Tank's] employees; and that all

---

[2] In its first amended complaint, Think Tank alleged the following claims: 1) breach of the covenant not to compete, 2) breach of the confidentiality clause, 3) breach of the agreement not to solicit its employees for other work, 3) tortious interference with contracts, 4) misappropriation of trade secrets, 5) tortious interference with business relationships, 6) unjust enrichment, and 7) defamation. In addition, a claim for unfair competition was alleged against Chester. Appellant's App. p. 50-115.

defendants in concert with one another have either breached the [covenant] or induced or aided the breach....”

On May 1, 2002, the defendants filed for a change of venue, and the Lake Superior Court transferred the case to the Porter Superior Court on May 6, 2002. After a hearing on the defendants’ motion to dissolve the temporary restraining order, the trial court ruled on May 10, 2002, that the temporary restraining order was not properly issued because Think Tank failed to give proper notice pursuant to Indiana Rule of Trial Procedure 65(B)(2) and failed to post bond pursuant to Indiana Rule of Trial Procedure 65(C).

On June 7, 2002, Think Tank filed its “First Amended Verified Complaint For Injunctive And Other Relief.” In this amended complaint, Think Tank asserted breach of contract and tort claims against various defendants.

. . .

On December 31, 2009, the defendants filed a motion for summary judgment challenging Think Tank’s claims. On March 9, 2010, after holding a hearing and reviewing the designated evidence of all parties, the trial court granted the motion for summary judgment for the defendants on all of the claims raised by Think Tank in its first amended complaint. In doing so, the trial court concluded that the covenant not to compete in the various employment agreements “is overbroad and is therefore unenforceable ... and cannot be reformed.” The court also concluded that “the information alleged to have been misappropriated by [the defendants] does not constitute a ‘trade secret’ under the Indiana Trade Secret Act and therefore [Think Tank’s] claim for misappropriation fails as a matter of law.” The court further concluded as a matter of law that Think Tank’s claims for interference with a business relationship, unfair competition, and unjust enrichment “do not apply to the fact situation of this case.”

*Think Tank Software Dev. Corp. v. Chester, Inc.* (Think Tank I), No. 64A03-1003-PL-172 *1-3, 2011 WL 1362527 (Ind. Ct. App. Apr. 11, 2011).

[3]     In *Think Tank I*, a panel of this Court concluded that the trial court erred in granting summary judgment with regard to Think Tank’s claims for breach of

the covenant not to compete and confidentiality agreement contained in the employee agreement, its claim for tortious interference with a contract, and its trade secrets claim. We held that the employee agreements the defendants signed—including the covenant not to compete and the confidentiality agreement—were valid. We found that the trial court correctly granted summary judgment on all remaining issues. *Id*. at *16. In addition, we limited the damages on Think Tank's claims to the profits lost in regard to four customers: Braun Corporation (Braun), Lowell Public Library (Lowell), Weil-McClain, and Methodist Hospital. *Id.* at *12.

[4] Regarding the confidentiality clause and the misappropriation of trade secrets issues, we noted "the misappropriation of trade secrets issue is subsumed by the confidentiality clause issue." *Id.* at *7 n. 4. In determining that the grant of summary judgment was inappropriate on these issues, we stated:

> Think Tank has designated evidence that shows there is a genuine issue of material fact that prevents the grant of summary judgment on this issue. The fact finder must determine whether the items contained in the confidentiality clause are trade secrets that may be protected. If they are not, then Think Tank has not asserted that the covenant not to compete asserts a legitimate interest that may be protected and/or that the former employees have gained a unique competitive advantage or ability to harm Think Tank.

*Id.* at *9. The case was remanded to the trial court for disposition of the remaining claims.

[5] On May 7, 2013, this Court handed down another opinion in this case following an interlocutory appeal. *Think Tank Software Dev. Corp. v. Chester, Inc.*

(Think Tank II), 988 N.E.2d 1169 (Ind. Ct. App. 2013). Therein, Think Tank appealed the trial court's determination excluding expert evidence from Benjamin S. Wilner, Think Tank's economic expert, and requested that we clarify our decision regarding damages in *Think Tank I*.

[6] In *Think Tank II*, a panel of this Court found that the trial court had erred in ruling that Wilner's testimony regarding lost profits from Braun, Lowell, Weil-McClain, and Methodist Hospital was inadmissible. We also found that Wilner was qualified as an expert witness with respect to economics and business, but noted that,

> To the extent that Wilner's profit erosion analysis is based solely on the departure from Think Tank of the defendant employees and their subsequent employment by Chester, the analysis may be inadmissible because the defendant employees were free to leave and become employees elsewhere. They committed no wrong, contractually or otherwise, against Think Tank merely by leaving.

*Id.* at 1180.

[7] We also clarified the issue of damages in *Think Tank II*:

> Stated simply, four of Think Tank's claims survived summary judgment: breach of a covenant not to compete, breach of a covenant of confidentiality, misappropriation of trade secrets, and tortious interference with contract. In *Think Tank I*, we noted, "The proper measure of damages for breach of a covenant is the plaintiff's lost net profits." No. 64A03-1003-PL-172, at *9. Next, we concluded that Think Tank had established a dispute of material fact as to lost profits arising from Chester's relationship with four specific customers. Consequently, we limited the damages for Think Tank's claim for breach of the covenant not to compete to lost profits in relation to those four customers. This holding also applies to Think Tank's claim for breach of a covenant of confidentiality. Similarly, with respect to

> Think Tank's claim for tortious interference with contract, we determined that the claim only survived summary judgment as to the same four customers. *Id.* at *14. It stands to reason that Think Tank's damages for misappropriation of trade secrets is also limited to those four customers. However, we said nothing about any measure of damages for tortious interference with contract or for misappropriation of trade secrets. Nothing in *Think Tank I* should be understood to limit or define damages under those two claims.

*Id.* at 1179.

[8] On February 13, 2013, Think Tank moved to include its non-solicitation claim in the pretrial order, claiming that defendants had not sought summary judgment on the claim, and that neither the trial court nor this Court had considered its merits. The trial court denied the motion, determining that, although defendants had not explicitly raised the non-solicitation claim for summary judgment, "the trial court sua sponte held *all* claims for summary judgment in favor of the Defendant." Appellant's App. p. 43 (emphasis in original).

[9] On March 10, 2014, the case went to trial on Think Tank's remaining claims for misappropriation of trade secrets, tortious interference with contracts, and breach of the covenant not to compete and confidentiality provisions. At the conclusion of Think Tank's case-in-chief, the defendants moved for a directed verdict on all of Think Tank's claims. The trial court held a hearing on the motion on March 25, 2014, and granted the directed verdict on Think Tank's claim for misappropriation of trade secrets, reasoning that, "[it] is a question of law for the Court relative to what is and what is not a trade secret. Plaintiff has failed to show that the information obtained was ever, in law, a trade secret."

*Id.* at 37. The trial court also granted a directed verdict on the tortious interference with contracts claim. The remaining claims for breach of the confidentiality clause and the covenant not to compete were submitted to the jury. The jury returned a verdict in favor of the defendants on both claims.

[10] As several of the defendants had counterclaims that were to be tried separately, the jury's verdict against Think Tank was not an appealable final judgment. Think Tank moved for an entry of final judgment on its claims pursuant to Indiana Trial Rule 54(B). On May 29, 2014, the trial court granted that motion, and this appeal ensued.

# Discussion and Decision

[11] Think Tank appeals the trial court's directed verdict in favor of the defendants on its misappropriation of trade secrets claim. It argues that the trial court could not determine whether information constitutes a trade secret as a matter of law, as such a determination is contrary to the law of the case as decided by this Court in *Think Tank I* and *Think Tank II*. Think Tank also asserts that the trial court erred when it did not allow Think Tank to try its non-solicitation claim.[3]

---

[3] Think Tank also makes an argument regarding joint and several liability and asks that we issue an order allowing certain evidence to be admitted in any future trial. As we determine that a trial court correctly granted a directed verdict, we need not address these arguments.

# I. Misappropriation of Trade Secrets

Think Tank first argues that the trial court erred in granting a directed verdict on its misappropriation of trade secrets claim. The standard of review on a challenge to a motion for judgment on the evidence is the same as the standard governing the trial court in making its decision.[4] *J.E. Stone Tree Serv., Inc. v. Bolger*, 831 N.E.2d 220, 227 (Ind. Ct. App. 2005); *see also* Ind. Trial Rule 50(A) (governing judgments on the evidence). Judgment on the evidence is proper where all or some of the issues are not supported by sufficient evidence. *Id.* We will examine only the evidence and the reasonable inferences that may be drawn therefrom that are most favorable to the nonmovant, and the motion should be granted only where there is no substantial evidence supporting an essential issue in the case. *Id.* If there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper. *Id.*

At trial, Think Tank asserted that the defendants misappropriated trade secrets. Indiana Code section 24-2-3-2 defines a trade secret as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

---

[4] Indiana Trial Rule 50(A) governs motions for directed verdict, which are also called motions for judgment on the evidence. *Garcia v. State*, 979 N.E.2d 156, 157 (Ind. Ct. App. 2012).

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

In other words, a protectable trade secret has four characteristics: (1) information, (2) which derives independent economic value, (3) is not generally known or readily accessible by proper means by other persons who can obtain economic value from its use, and (4) is the subject of efforts reasonable under the circumstances to maintain its secrecy. *N. Elec. Co., Inc. v. Torma*, 819 N.E.2d 417, 425 (Ind. Ct. App. 2004). Think Tank maintains that the following information constitutes trade secrets: 1) the nature and design of its technical solutions; 2) the design of its customers' computer systems; 3) pricing; and 4) customer identities.

[14] Think Tank argues that the trial court erred when it found that the above information was not trade secrets as a matter of law. It argues that, in doing so, the trial court acted contrary to the law of the case. The law of the case doctrine provides that an appellate court's determination of a legal issue binds both the trial court and the appellate court in any subsequent appeal involving the same case and substantially the same facts. *Dutchmen Mfg., Inc. v. Reynolds*, 891 N.E.2d 1074, 1082 (Ind. Ct. App. 2008). The purpose of the doctrine is to minimize unnecessary repeated litigation of legal issues once they have been resolved by an appellate court. *Id.* This doctrine is based upon the sound policy that once an issue is litigated and decided, that should be the end of the matter. *Godby v. Whitehead*, 837 N.E.2d 146, 152 (Ind. Ct. App. 2005). However, unlike the doctrine of res judicata, the law of the case doctrine is a discretionary tool. *Reynolds*, 891 N.E.2d at 1082. To

invoke this doctrine, the matters decided in the earlier appeal must clearly appear to be the only possible construction of an opinion. *Id.* at 1082–83. Thus, questions not conclusively decided in the earlier appeal do not become the law of the case. *Id.* at 1083.

[15] Think Tank argues that the trial court's directed verdict directly conflicts with the law of the case. In *Think Tank I*, a panel of this Court determined that Think Tank had designated evidence showing that a genuine issue of material fact existed regarding its misappropriation of trade secrets claim and held that, "[t]he fact finder must determine whether the items contained in the confidentiality clause are trade secrets that may be protected." No. 64A03-1003-PL-172 at *9. In other words, we determined that a jury must decide whether the information Think Tank alleged to be trade secrets were, in fact, trade secrets. *Id.* In its order granting a directed verdict in favor of the defendants on Think Tank's misappropriation of trade secrets claim, the trial court stated, "[i]t is a question of law for the Court relative to what is and what is not a trade secret. Plaintiff has failed to show that the information obtained was ever, in law, a trade secret." Appellant's App. p. 37. Think Tank argues that this determination was directly contrary to the law of the case.

[16] Conversely, the defendants would have us determine that whether or not information constitutes trade secrets is a question of law to be decided by the court. The defendants point us to *PrimeCare Home Health v. Angels of Mercy Home Health Care LLC*, 824 N.E.2d 376, 381 (Ind. Ct. App. 2005), in which a panel of this Court held that "[w]hat constitutes trade secret information is a

determination for the court to make as a matter of law." Therefore, the defendants argue that the trial court did not err in granting a directed verdict.

[17] Think Tank responds that, even if the trial court could issue a directed verdict as a matter of law, this Court's ruling in *Think Tank I*—that there was enough evidence of the existence of trade secrets to require the claim to go to the jury—stands as the law of the case on the question of whether Think Tank presented enough evidence to defeat a motion for directed verdict. Appellant's Br. p. 21. Think Tank argues that this Court's determination in *Think Tank I* that "designated evidence that shows there is a genuine issue of material fact that prevents the grant of summary judgment on this issue" and that "[t]he fact finder must determine whether the items contained in the confidentiality clause are trade secrets that may be protected," precluded the trail court from determining that Think Tank had not presented enough evidence to survive the defendant's motion for a directed verdict. No. 64A03-1003-PL-172 at *9. Therefore, Thank Tank argues that the evidence required to defeat a motion for summary judgment and a motion for directed verdict is the same, "[b]ecause those standards of review are essentially the same." Appellant's Br. p. 21.

[18] In addressing these arguments, we first take note of the fact that the procedural standards for summary judgment and judgment on the evidence are fundamentally different. In *Purcell v. Old National Bank*, 972 N.E.2d 835 (Ind. 2012), our Supreme Court discussed these standards:

> By its express language, Rule 50 acknowledges that a party must do more than simply present some evidence; in addition, that evidence

> must also be sufficient evidence. Unlike a motion for summary judgment under Rule 56, the sufficiency test of Rule 50(A) is not merely whether a conflict of evidence may exist, but rather whether there exists probative evidence, substantial enough to create a reasonable inference that the non-movant has met his burden. The crux of the qualitative failure analysis under Rule 50(A) is whether the inference the burdened party's allegations are true may be drawn without undue speculation.

*Id.* at 841-42 (internal quotations and citations removed). Therefore, the same evidence that allowed Think Tank to defeat a summary judgment motion could be insufficient to overcome a motion for a directed verdict. Thus, Think Tank cannot argue that—in defeating the defendant's summary judgment motion—it has also automatically defeated a motion for directed verdict.

[19]     In addition, while we acknowledge the tension between the parties' positions regarding who is to determine whether information is a trade secret, we need not determine today if the question of whether information constitutes a trade secret is a matter of law or a question of fact. Instead, we determine that, as a matter of law, Think Tank failed to produce enough evidence to allow a reasonable fact finder to determine that the proffered information was trade secrets. More particularly, we find that Think Tank failed to show that any of the information alleged to be trade secrets was not generally known or ascertainable to the public, and, therefore, was not a trade secret. *See PrimeCare*, 824 N.E.2d 381 ("[A] protectable trade secret . . . is not generally known or readily accessible by proper means by other persons who can obtain economic value from its use."). As noted above, one of the four necessary characteristics

of a protectable trade secret is that it is not readily ascertainable. *N. Elec. Co.*, 819 N.E.2d at 425.

[20] The facts in this case are similar to those in *Steenhoven v. College Life Ins. Co. of America*, 458 N.E.2d 661 (Ind. Ct. App. 1984). In the *Steenhoven* case, this Court found that certain policyholder information could not be considered a trade secret because "it was readily available from the policyholder themselves" and the information was "the same information that could be extracted from the policyholder in a blind replacement attempt." *Id*. at 975 n.6. We further found that:

> The real thrust of appellee's argument is not that Steenhoven disclosed College Life's customer list (at least as concerns his limited knowledge thereof), but rather, that Steenhoven used such list to benefit economically. College Life seemingly seeks not to protect a trade secret, but rather, to prevent competition by its former agent. Insofar as College Life attempts to merely restrain Steenhoven's competition, we believe the Uniform Trade Secrets Act to be an improper vehicle therefore. The fact that Steenhoven possesses certain knowledge acquired within the course of his employment does not mandate that, upon his departure, Steenhoven must wipe clean the slate of his memory. Rather, it is clear from the language of the act that the Uniform Trade Secrets Act was promulgated by the legislature to prevent the abusive and destructive usurpation of certain economically-imbued business knowledge commonly referred to as trade secrets. We do not believe the legislature ever intended the statute's provisions to act as a blanket post facto restraint on trade. If College Life had desired to prevent competition by its former agents based upon the agents' acquired knowledge, it could have done so contractually via the provisions of a covenant not to compete. Having forgone that possibility, we believe it misguided to attempt to stem such competition by arguing, in essence, that properly-acquired knowledge of the employer's business is automatically made a trade

secret pursuant to the Act, without regard to the nature of the information, simply because it can be compiled into a table or a list.

[21] *Id.* at 974 n.7. To be clear, we did not hold in *Steenhoven* that customer lists and the information accumulated regarding customers cannot be a trade secret, and we do not do so here. However, under the circumstances, it appears to us that Think Tank seeks not to protect a trade secret, but instead to prevent competition.

[22] Here, Chester could have used proper means to acquire the information claimed by Think Tank as trade secrets. Indeed, the trial court came to the same conclusion. When granting a directed verdict on the trade secrets claim, it determined that all the information presented by Think Tank was readily available from the customer:

> Could the information be ascertained from other means? [] I think the answer is quite obviously, yes. From what we had here, all you had to do was walk in and talk to the [prospective] client and they [could] tell you pretty much whatever it was they were doing or what they had. That's been the evidence that I've seen here.

Tr. p. 1818. This was the basis for the trial court's grant of a directed verdict—that Think Tank had failed to show that the information was not readily ascertainable from another source.

[23] We agree with the trial court, and find that it is clear that all of the information Think Tank claimed as trade secrets was generally known or readily ascertainable from another source, including Think Tank's customers and network certification training programs available to the public. We find that 1) the computer certifications and intellectual capital Think Tank possessed was

readily available information; 2) knowledge of customers' computer systems and current or future needs was readily ascertainable, as such information belonged to the customers in question; and 3) pricing information does not constitute a trade secret, as it too was readily available from the customers. Further, while custom written software could possibly be a trade secret, as it pertains to the four customers in the instant case, Think Tank failed to present any evidence regarding the alleged custom written software. Thus, the trial court did not err in granting a directed verdict.

## II. Non-Solicitation Claim

[24] Finally, Think Tank argues that the trial court erred when it denied Think Tank's motion to try its non-solicitation claim. Think Tank argues that the trial court's March 9, 2010, summary judgment ruling "issued a sweeping ruling disposing of all of Think Tank's claims, granting the defendants more relief than they sought." Appellant's Br. p. 31. Think Tank points out that the defendants, in moving for summary judgment, "offered no argument with respect to Think Tank's non-solicitation claim," and that the trial court "did not even mention Think Tank's non-solicitation claim, let alone address its merits" when granting summary judgment. In addition, Think Tank notes that this Court did not address its non-solicitation claim in *Think Tank I.* As a result, Think Tank argues that neither court has addressed the non-solicitation claim on its merits and that, therefore, the trial court erred by not allowing the claim to be tried by a jury.

Here, Think Tank simply misstates the record. The defendant's motion for summary judgment states, "[a]ll Defendants . . . move that summary judgment be entered in their favor on *all counts* of the Plaintiff's First Amended Verified Complaint . . . because there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law *on all counts*." Appellant's App. p. 116 (emphases added). In addition, when the trial court ruled on the defendant's motion for summary judgment, it granted summary judgment for defendants "on *all of the claims* in Plaintiff's complaint." *Id.* at 317 (emphasis added). Therefore, the trial court granted the defendants exactly the relief they sought.

Further, Think Tank was or should have been aware that the trial court had granted summary judgment in favor of the defendants on all the counts alleged in its complaint, including the non-solicitation claim. Yet, Think Tank did not appeal the trial court's grant of summary judgment with regard to the non-solicitation claim in its first appeal to this Court and, therefore, the issue has been waived. *See Montgomery v. Trisler*, 771 N.E.2d 1234, 1239 (2002) ("[A]n issue ripe for review, but not raised in the first appeal, will be considered as finally determined and will be deemed affirmed."). Therefore, the trial court correctly barred the non-solicitation claim.

The judgment of the trial court is affirmed.

Vaidik, C.J. and May, J., concur.