## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**ATTORNEY FOR APPELLANT**

Peter C. Soldato
Goshen, Indiana

**ATTORNEY FOR APPELLEE**

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jesus Olvera Duran,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 10, 2020

Court of Appeals Case No.
19A-CR-2419

Appeal from the Elkhart Superior Court

The Honorable Stephen Bowers, Judge

Trial Court Cause No.
20D02-1806-F2-28

**May, Judge.**

[1] Jesus Olvera Duran appeals following his convictions of Level 4 felony burglary,[1] Level 5 felony criminal confinement where the victim was under fourteen years of age,[2] Class B misdemeanor possession of marijuana,[3] and Class C misdemeanor possession of paraphernalia.[4] After the State's presentation of evidence, Duran moved for a directed verdict regarding the charged crimes of Level 2 felony burglary[5] and Level 3 felony criminal confinement.[6] Even though the jury found Duran guilty of lesser included offenses as to those two charges, he claims on appeal the trial court erred in denying his directed verdict motion because the State failed to present any evidence that he possessed a deadly weapon. We affirm.

# Facts and Procedural History

[2] Margarita Miller had four children—D.M.(1), D.M.(2), D.M.(3), and D.M.(4)[7]—with Duran's co-defendant, Marvin Maldonado. In June 2018, Miller and Maldonado were not in a relationship and Maldonado did not live in Miller's apartment. On the evening of June 19, 2018, Miller let Y.V.—her 12

---

[1] Ind. Code § 35-43-2-1(1).

[2] Ind. Code § 35-42-3-3(b)(1)(A).

[3] Ind. Code § 35-48-4-11(a)(1).

[4] Ind. Code § 35-48-4-8.3(b).

[5] Ind. Code § 35-43-2-1(3)(A).

[6] Ind. Code § 35-42-3-3(3)(A).

[7] The children were 9, 7, 5 and 2, respectively. (Tr. Vol. III at 76-77; 122.)

year old babysitter—stay with three of her children while she went grocery shopping.[8]  At some point in the evening, Y.V. heard a few loud bangs on the front door of the apartment building.  Although the door was locked, Duran and Maldonado entered the apartment building and went upstairs where Y.V. was sitting in the living room of Miller's apartment.  Maldonado walked to a back room of the apartment, and Duran stood near a metal baby gate in the living room.  Y.V. wanted to get her phone which was nearby, but Duran told her that he would shoot her if she moved from the living room. A few seconds later, Y.V. heard something strike the metal baby gate.  Y.V. did not see anything in Duran's hand, but she believed Duran had a gun and felt she was not free to leave the room.

[3]     Maldonado reentered the living room, asked Y.V. where Miller's new boyfriend was, and told Y.V. that he "was gonna put 66 stitches in him."  (Tr. Vol. III at 145.)  D.M.(3) woke up and voluntarily left with Duran and Maldonado.  After they left, Y.V. called Miller to let her know what happened.  Y.V. then went downstairs to try to secure the front door, and she saw the three leave in a white car.

[4]     Soon afterward, Patrolman Adrian Zehr of the Elkhart County Sheriff's Department observed Maldonado's white car cross over the clearly marked center line of the road and return to its lane of travel.  Patrolman Zehr initiated

---

[8] D.M.(1) was "at his grandma's house." (Tr. Vol. III at 76.)

a traffic stop and saw the driver, Maldonado, and the passenger, Duran, switch seats. He went to the passenger side of the vehicle, and he could smell a strong odor of an alcoholic beverage coming from the car. Maldonado exited the vehicle and a knife fell from his lap. Patrolman Zehr then put Maldonado in handcuffs, relocated Maldonado to his patrol car and placed Maldonado under arrest based on his intoxication while driving.

[5] Patrolman Zehr searched the vehicle because it "was going to be towed" and found a bookbag on the floorboard of the front passenger seat where Duran had been seated. (Tr. Vol. II at 231.) Inside the bookbag, Patrolman Zehr found Duran's social security card, a metal pipe, and a smoking pipe with burnt marijuana on the end of it. A second metal pipe was also found in the vehicle, but neither metal pipe was collected as evidence. Patrolman Zehr arrested Duran based on the marijuana found in his bookbag.

[6] On June 21, 2018, the State charged Duran with Level 2 felony burglary, Level 3 felony criminal confinement, Class B misdemeanor possession of marijuana, Class A misdemeanor possession of paraphernalia,[9] and Class A misdemeanor possession of marijuana with a prior conviction.[10] On February 6, 2019, the State amended the charging information, replacing the charge for Class A

---

[9] Ind. Code § 35-48-4-8.3(b).

[10] Ind. Code § 35-48-4-11(b)(1).

misdemeanor possession of marijuana with a prior conviction with Class C misdemeanor possession of paraphernalia.[11]

[7] During the jury trial on August 20, 2019, Y.V. testified about the manner in which Duran and Maldonado entered the apartment and about not feeling like she was free to leave the apartment while they were inside. Patrolman Zehr testified about the metal pipe he found inside the bookbag. At the close of State's case, Duran moved for a directed verdict pursuant to Indiana Trial Rule 50(A), which the trial court denied:

> [Duran]: I don't intend to call any witnesses at this point. I do have a motion that I'd like to make for a directed verdict, at least as it relates to the while armed element. But we don't have any— I don't have any witnesses. I don't know…
>
> [Court]: Why don't you go ahead and rest, and then I'll excuse the jury so that we can work on the final instructions and we'll— we'll consider the motion at that time. I assume it's a motion for a judgment on the evidence[.]
>
> * * * * *
>
> [Court]: Please be seated. Mr. Wilson, I understand you have a motion to make at this time?

---

[11] Ind. Code § 35-48-4-8.3(b).

[Duran]: Yes, Your Honor. I would ask the Court to find that the State failed to present any evidence on the issue of while armed as to Count 1 and Count 2.

[Court]: I'm sorry. Would you repeat that? You were facing away from me, and I didn't hear everything that you said.

[Duran]: I would ask the Court to find that the State failed to present any evidence on the elements of while armed, in Count 2 specifically but also in Count 1.

\*\*\*\*\*

[Court]: [State]?

[State]: Your Honor, there's been plenty of evidence of while armed. Y.V. just testified that she observed a knife in defendant's back pocket. I mean, there's an inference that can be drawn that the metal pipe in the vehicle discovered where [Duran] was, was the same metal object that was clinging [sic] against the baby gate. There's sufficient evidence to put this matter in front of the jury and we ask that you do so and deny the motion.

[Court]: At this point, I'm going to grant[12] the State leave to amend to substitute "metal pipe" for "crowbar." And I will dismiss [sic] the motion for judgement on the evidence. I think that the evidence is limited with respect to that issue, but I think there's enough to get to the jury.

---

[12] Following a recess in the State's presentation of evidence, the State had verbally moved to amend the charging information.

(Tr. Vol. III at 180; 183-84) (footnote added).

[8] On August 21, 2019, the jury returned guilty verdicts for Level 4 felony burglary, which required no finding of Duran being armed with a deadly weapon; Level 5 felony criminal confinement where victim is under 14 years of age, which also required no finding of Duran being armed with a deadly weapon;[13] Class B misdemeanor possession of marijuana; and Class C misdemeanor possession of paraphernalia. On September 24, 2019, the trial court sentenced Duran to an aggregate sentence of eight years, with four years suspended to probation, and ordered Duran to serve his sentence consecutive to his sentence for an unrelated case.

# Discussion and Decision

[9] Duran challenges the trial court's denial of his motion for directed verdict on two of his charges: Level 2 felony burglary and Level 3 felony criminal confinement. He argues the State failed to present evidence that he possessed a deadly weapon during the events at Miller's apartment. To prove Duran committed Level 2 felony burglary, the State had to present evidence that Duran: (1) broke into and entered Miller's home; (2) with the intent to commit a felony; (3) while armed with a deadly weapon. *See* Ind. Code § 35-43-2-1(3)(A) (elements of charged burglary). To prove Duran committed Level 3

---

[13] Ind. Code § 35-42-3-3(3)(a).

felony criminal confinement, the State had to present evidence that Duran: (1) knowingly or intentionally confined Y.V.; (2) without Y.V.'s consent; (3) while armed with a deadly weapon. Ind. Code § 35-42-3-3(3)(A) (elements of charged confinement). A deadly weapon is defined as "a destructive device, weapon, device, taser [] or electronic stun weapon [], equipment, chemical substance, or other material that in the manner it—(A) is used; (B) could ordinarily be used; or (C) is intended to be used—is readily capable of causing serious bodily injury." Ind. Code § 35-31.5-2-86(2).

[10] Indiana Trial Rule 50(A) provides in part:

> Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

A directed verdict is proper only if all or some of the issues are not supported by sufficient evidence. *Perez v. Hu*, 87 N.E.3d 1130, 1134 (Ind. Ct. App. 2017). "'We will examine only the evidence and the reasonable inferences that may be drawn therefrom that are most favorable to the nonmovant, and the motion should be granted only where there is no substantial evidence supporting an essential issue in the case.'" *Id.* (quoting *Think Tank Software Dev. Corp v. Chester, Inc.*, 30 N.E.3d 738, 744 (Ind. Ct. App. 2015), *trans. denied*). A directed verdict or judgment on the evidence is improper if there is evidence that would allow reasonable people to differ as to the result. *Id.*

[11] Duran argues the trial court erred when it denied his motion for directed verdict. The State contends that even if the trial court erred in doing so, such error was harmless. An error is harmless when it results in no prejudice to the "substantial rights" of a party. *Camm v. State*, 908 N.E.2d 215, 225 (Ind. 2009); Ind. Trial Rule 61. At its core, the harmless-error rule is a practical one, embodying "the principle that courts should exercise judgment in preference to the automatic reversal for error and ignore errors that do not affect the essential fairness of the trial." *United States v. Harbin*, 250 F.3d 532, 546 (7th Cir. 2001) (internal quotation marks omitted).

[12] Here, we are not persuaded by Duran's argument that he "may have been able to avail himself of a favorable plea bargain" had the court granted a directed verdict. (Appellant's Br. 15-16.) The jury found Duran guilty of the lesser included offenses. Duran does not point us to any case law that supports his claim.

[13] Furthermore, we do not agree that "the denial of Duran's motion for directed verdict surely influenced the deliberation of the jury by giving jury members more room for compromise in their verdict." (*Id*. at 16). The jury deliberated over evidence that supported an inference that Duran possessed a deadly weapon and committed Level 2 felony burglary and Level 3 felony criminal confinement and ultimately the jury returned guilty verdicts for the lesser included offenses. Based thereon, we conclude that the trial court's denial of Duran's motion for directed verdict was harmless. *See Peek v. State*, 454 N.E.2d 450, 455 (Ind. Ct. App. 1983) (any error in denial of directed verdict is harmless

when defendant is not convicted of the charge for which he moved for directed verdict).

# Conclusion

[14] We conclude that any error in the trial court's denial of Duran's motion for directed verdict was harmless because he was not convicted of the crimes on which his motion for directed verdict was based. Accordingly, we affirm.

[15] Affirmed.

Crone, J., and Pyle, J., concur.