Dharam BHATIA, individually and as parent and natural guardian of Gurpreet Kaur and Paravmir Singh, both minors, Appellants/Plaintiffs,

v.

Anuradha KOLLIPARA, M.D., Appellee/Defendant.

No. 02A03–0905–CV–237.

Court of Appeals of Indiana.

Nov. 10, 2009.

Thomas A. Manges, Roby & Manges, Fort Wayne, IN, Attorney for Appellant.

Dane L. Tubergen, N. Jean Schendel, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

In this medical malpractice action, Appellant/Plaintiff Dharam Bhatia appeals from the trial court's grant of summary judgment in favor of Dr. Anuradha Kollipara, M.D. We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

Parminder Kaur Bhatia, born on July 18, 1958, began seeing Dr. Kollipara on July 19, 1999. (Appellant's App. 52). Charts prepared by Dr. Kollipara dated from 2000 to 2003 indicate that Parminder was advised to schedule a Pap smear, a test designed to diagnose cervical cancer. (Appellant's App. 46–49, 65). The last time Dr. Kollipara saw Parminder was on April 26, 2004, regarding symptoms of irregular menses and fatigue. (Appellant's App. 43). Ultimately, on May 3, 2004, Parminder was diagnosed with cervical

cancer, and, despite receiving various treatments, succumbed on December 6, 2004. (Appellant's App. 43, 52).

On July 29, 2005, Parminder's husband Dharam filed a proposed complaint against Dr. Kollipara with the Department of Insurance, alleging medical malpractice on several grounds, including an alleged failure to advise Parminder to receive Pap smears. (Appellant's App. 11–12). On January 31, 2007, the Medical Review Panel ("MRP") unanimously opined that "[t]he evidence does not support the conclusion that [Dr. Kollipara] failed to comply with the appropriate standard of care as charged in the Complaint." (Appellant's App. 18).

On March 30, 2007, Dharam filed a complaint in Allen Superior Court. (Appellant's App. 9). On April 26, 2007, Dr. Kollipara filed a motion for summary judgment. (Appellant's App. 8–22). On June 9, 2008, Dharam filed a response to Dr. Kollipara's summary judgment motion and designated the deposition of MRP member Dr. Lisa Kinderman, M.D., which contained the following exchange:

Q. If Parminder had not been told to have a Pap smear [from May 24, 2000, to March 3, 2003], if she really wasn't getting that information to make an informed decision about having a Pap smear or not, would that have violated the standard of care?

A. I think so, yes.

Q. And does that mean that if the evidence were that she wasn't told to have a Pap smear during that three-year span of time, that your opinion in this case and the medical review panel would have been different?

A. I think so, yes. Certainly on my part.

Q. Okay. I realize you might not be able to speak for [the other doctors on the MRB], but I assume that never came up in your conversations because you presumed the truthfulness of the chart.

A. Correct.

Q. Because you never got past the substandard care issue, I'll tell you that in cases where doctors are on a medical review panel and if they find to begin with that the doctor did give substandard care, they're usually asked to answer a second question, and that is whether the alleged violation of standard of care was a factor in causing the damages.

A. Right.

Q. I take it you and the other doctors never got to that second causation question—

A. That's right.

Q. —because of your findings.

A. Right.

Q. Okay. Have you given any thought, Doctor, at all to the question that if Dr. Kollipara had not told Parminder to have Pap smears during that three-year span, and thus if your opinion would be different, that that violates the standard of care because you should tell ladies to have Pap smears, about whether there had been a causation issue there?

In other words, if there was a violation of standard of care, do you feel like you're in a position to be able to answer the question would that earlier diagnosis have made a difference or, if so, to what degree?

A. I think it would have made a difference. Exactly to what degree I don't know, and it's because of the

slow growing nature of the cervical cancer.

Appellant's App. pp. 70–72.

Dharam also designated a report from forensic document examiner Ronald Blacklock regarding six of Dr. Kollipara's progress reports on Paraminder prepared between May of 2000 and March of 2004. (Appellant's App. 81). In the report, Blacklock opined that a different pen had been used to make entries regarding Pap smear recommendations on three of the six reports. (Appellant's App. 81–82). Additionally, Dharam designated an affidavit from Ruby Kumari, Parminder's daughter, in which she averred that she had accompanied her mother to some of her appointments with Dr. Kollipara, had never been outside her mother's presence during these appointments, and had never heard Dr. Kollipara say anything regarding Pap smears at any time. (Appellant's App. 87–88). Finally, Dharam designated his affidavit, in which he averred that either he or Kumari had accompanied Parminder on every appointment with Dr. Kollipara, that he was never outside Parminder's presence during those appointments he attended, and that Dr. Kollipara never said anything regarding Pap smears. (Appellant's App. 87–88). Both Kumari and Dharam averred that any notations indicating that Parminder had been advised regarding Pap smears during those appointments they respectively attended were false. (Appellant's App. 88, 91). On February 12, 2009, following a hearing, the trial court granted Dr. Kollipara's summary judgment motion. (Appellant's App. 190–96).

## DISCUSSION AND DECISION

### Standard of Review

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs.* *Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind.Ct. App.2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.*

### Indiana Medical Malpractice in General

"In general, a plaintiff must prove each of the elements of a medical malpractice case, which are that: (1) the physician owed a duty to the plaintiff; (2) the physician breached that duty; and (3) the breach proximately caused the plaintiff's injuries." *Sawlani v. Mills*, 830 N.E.2d 932, 938 (Ind.Ct.App.2005) (citing *Mayhue v. Sparkman*, 653 N.E.2d 1384, 1386 (Ind.1995)), *trans. denied.* "In medical malpractice cases, it is well-established that when the medical review panel opines that the plaintiff has failed to make a prima facie case, she must then come forward with expert medical testimony to rebut the panel's opinion in order to survive summary judgment." *Brown v. Banta*, 682 N.E.2d 582, 584 (Ind.Ct.App.1997), *trans. denied.* To determine whether the physician's conduct fell below the legally prescribed standard of care, the plaintiff must present expert testimony to establish

what a reasonably prudent physician would or would not have done in treating the plaintiff. *Snyder v. Cobb,* 638 N.E.2d 442, 445–46 (Ind.Ct.App.1994), *trans. denied.* Failure to provide expert testimony will usually subject the plaintiff's claim to summary disposition.[1] *Widmeyer v. Faulk,* 612 N.E.2d 1119, 1122 (Ind.Ct.App.1993).

Here, Dharam presented expert testimony, through Dr. Kinderman's deposition, that Dr. Kollipara would have violated the standard of care had she not told Parminder to have a Pap smear done between 2000 and 2003 and that, if Dr. Kollipara, in fact, had not so advised, that failure "could have made a difference." Appellant's App. p. 72. We conclude that, although this testimony does not specifically mention or establish the relevant standard of care, the standard of care may be inferred from it, *i.e.,* that a reasonable physician treating Parminder *would* have advised her to have a Pap smear performed during the relevant time frame.

Moreover, Dharam's designated evidence raises the genuine issue of material fact contemplated by the hypothetical posed to Dr. Kinderman—whether Dr. Kollipara did, in fact, advise Parminder to have a Pap smear performed. Even without taking into account the forensic ink evidence, Dharam's designated evidence indicates that either Dharam or Kumari accompanied Parminder to each of her appointments with Dr. Kollipara, that one of them was with Parminder at all times, and that neither ever heard anything regarding Pap smears. This evidence is sufficient to raise a genuine issue of material fact as to whether Dr. Kollipara ever advised Parminder to have a Pap smear per-

formed between 2000 and 2003, which, according to Dr. Kinderman's deposition, is the factual question at the heart of this matter. Because Dharam has sufficiently rebutted the MRP's opinion with expert testimony, we conclude that the trial court incorrectly granted Dr. Kollipara's summary judgment motion. We therefore reverse and remand for further proceedings.

We reverse the judgment of the trial court and remand for further proceedings.

BAILEY, J., and VAIDIK, J., concur.

---

1. The exception to this rule is that a plaintiff is not required to present expert testimony in those cases where deviation from the standard of care is a matter commonly known to lay persons. *Culbertson v. Mernitz,* 602 N.E.2d 98, 100 (Ind.1992). Dharam makes no argument that the applicable standard of care in this case is a matter commonly known to lay persons.