# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 28 2019, 6:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Elliott I. Pinkie
Susan E. Cline
Louise K. Conces
Cline Law Group, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

John Jacob Warrum
Mt. Vernon, Indiana

Richard L. Schultheis
Indianapolis, Indiana

Ronald Warrum
Mt. Vernon, Indiana

H. Wayne Turpin
Evansville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

IU Health, Inc. d/b/a Riley Hospital for Children,

*Appellant-Defendant,*

v.

Mike Meece and Natalie L. Meece, Individually and as Parents and Natural Guardians of Gabriel M. Meece, Deceased Minor,

May 28, 2019

Court of Appeals Case No. 18A-CT-2968

Appeal from the Vanderburgh Circuit Court

The Honorable David D. Kiely, Judge

Trial Court Cause No. 82C01-1607-CT-3266



*Appellees-Plaintiffs.*

**Najam, Judge.**

# Statement of the Case

IU Health, Inc. d/b/a Riley Hospital for Children ("Riley") appeals from two of the trial court's orders following a jury verdict in favor of Mike Meece and Natalie L. Meece, Individually and as Parents and Natural Guardians of Gabriel M. Meece ("Gabe"), Deceased Minor (collectively, "the Meeces"), on their complaint against Riley alleging medical malpractice. Riley presents a single dispositive issue for our review, namely, whether the trial court erred when it denied Riley's motion for a directed verdict at the conclusion of the Meeces' presentation of evidence at trial.

We reverse.

# Facts and Procedural History

On May 3, 2010, Gabe, who was five years old, began treatment at Riley for acute lymphoblastic leukemia/lymphoma ("ALL"). Gabe and his parents lived near Evansville at that time, and they traveled several hours to reach Riley in

Indianapolis for treatment. Dr. Terry Vik was Gabe's attending physician at Riley. As part of his treatment, Gabe received chemotherapy at Riley on May 4, May 11, May 18, May 25, and June 2.

[4] On June 2, Gabe received an injection of intrathecal methotrexate. On June 5, Gabe developed a fever. Gabe's mother, Natalie, called Riley's on-call nurse to report that Gabe had a fever and that he had vomited. Per the nurse's instructions, Natalie took Gabe to the emergency room at nearby Deaconess Hospital ("Deaconess") in Evansville, where he was treated and released. The next day, June 6, Natalie again called Riley's on-call nurse to report that Gabe had a fever and a headache. Again, the nurse instructed Natalie to take Gabe to the emergency room at Deaconess, where he was treated and released.

[5] On June 8, Gabe returned to Riley for another round of chemotherapy, including a lumbar puncture and injection of intrathecal methotrexate. Gabe did not have a fever or other ailments when he arrived that day. After the lumbar puncture, Gabe developed a headache, which resolved after he was given morphine and other medications. Gabe was discharged that evening, and Natalie drove him home.

[6] During the drive home, Natalie had to pull the car over because Gabe "was screaming saying his head was hurting." Tr. Vol. I at 60. Natalie had Gabe lie down in the back seat of the car, and she drove him home and put him to bed. The next morning, on June 9, Gabe "woke up screaming . . . [and] kept saying that his legs hurt, he couldn't walk," and Gabe said that "his head hurt[.]" *Id.*

Natalie called Riley, and someone there instructed her to take Gabe to a nearby emergency room. From there, Gabe was transported by ambulance to Riley, where he was admitted. Health care providers at Riley initially diagnosed Gabe with meningitis. On June 17, when his symptoms had not improved, Gabe was transferred to the pediatric intensive care unit at Riley. On June 24, Gabe was finally diagnosed as suffering from chemotherapy toxicity. Specifically, Gabe had had an extremely bad reaction to the methotrexate administered to him on June 8. Gabe died on June 25.

[7] On September 15, 2014, the Meeces filed a second amended proposed complaint for damages with the Indiana Department of Insurance alleging that Deaconess, Riley, and Dr. Vik had committed medical malpractice that proximately caused Gabe's death.[1] A unanimous medical review panel concluded that "the evidence [did] not support the conclusion that [any of the defendants had] failed to meet the applicable standard of care as charged in the proposed Complaint." Appellant's App. Vol. II at 40-41. In addition, two out of the three panel members concluded that the defendants' conduct "was not a factor of the resultant damages." *Id.* at 41.

[8] On July 5, 2016, the Meeces filed their complaint against the defendants with the trial court. Dr. Vik and Riley moved for summary judgment. In response,

---

[1] The record does not show when the Meeces filed their first proposed complaint for damages. In any event, the second amended proposed complaint was timely filed.

the Meeces submitted Dr. David Wilson's affidavit in which he stated in relevant part that

> 8.  It is below the standard of care for Dr. Vik, his agents and representatives, and Riley Hospital, its agents and representatives, to not delay the 6/8/10 intrathecal dose of methotrexate.
>
> 9.  The failure to postpone the intrathecal methotrexate was the cause of death on 6/25/10.

Appellees' App. Vol. II at 5. Dr. Vik and Riley then withdrew their summary judgment motion, and they took Dr. Wilson's deposition. In his deposition, Dr. Wilson did *not* testify that Riley's conduct had breached the applicable standard of care. Accordingly, Riley filed another summary judgment motion, which the trial court denied after a hearing.

[9] During the ensuing jury trial,[2] the Meeces presented the testimony of a single expert witness in their favor, Dr. Wilson. At the conclusion of the Meeces' presentation of evidence, Riley moved for a directed verdict. In particular, Riley argued that the Meeces had not presented any evidence regarding the standard of care owed to Gabe by Riley or whether Riley had breached the applicable standard of care. The trial court denied that motion. A jury found in favor of the Meeces on their claims against Riley and awarded them $3,000,000, but it found in favor of Dr. Vik on their claims against him.

---

[2] Deaconess was dismissed as a defendant prior to trial.

Pursuant to Indiana's Medical Malpractice Act, the trial court reduced the amount of damages awarded to the statutory cap of $1,250,000.

[10] A few weeks later, Riley moved the trial court for judgment on the evidence under Trial Rule 50(A)(3), and Riley also filed a motion to correct error.[3] In those motions, Riley again argued that the Meeces had not presented any evidence to support a determination of its negligence. The trial court denied both of Riley's motions. This appeal ensued.

## Discussion and Decision

[11] Riley contends that the trial court erred when it denied its motion for a directed verdict at the close of the Meeces' presentation of evidence during trial. Motions for a directed verdict, also called motions for judgment on the evidence, are controlled by Indiana Trial Rule 50(A). *Perez v. Hu*, 87 N.E.3d 1130, 1134 (Ind. Ct. App. 2017). That rule provides in part:

> Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

---

[3] Trial Rule 50(A)(3) provides that a party may move for judgment on the evidence after the presentation of all evidence and before judgment. Riley claims that the trial court had not yet reduced the jury verdict to a judgment, but a CCS entry dated September 20, 2018, refers to the "judgment." Appellant's App. Vol. II at 19. In any event, Riley timely filed its motion to correct error, and, after the trial court denied that motion, Riley timely filed this appeal.

T.R. 50(A). When reviewing a motion for directed verdict, we use the same standard as the trial court. *Young v. Ind. Dep't of Nat. Resources*, 789 N.E.2d 550, 556 (Ind. Ct. App. 2003), *trans. denied*. That is, our review is *de novo*. A directed verdict is proper only if all or some of the issues are not supported by sufficient evidence. *Perez*, 87 N.E.3d at 1134. "'We will examine only the evidence and the reasonable inferences that may be drawn therefrom that are most favorable to the nonmovant, and the motion should be granted only where there is no substantial evidence supporting an essential issue in the case.'" *Id.* (quoting *Think Tank Software Dev. Corp. v. Chester, Inc.*, 30 N.E.3d 738, 744 (Ind. Ct. App. 2015), *trans. denied*). A directed verdict or judgment on the evidence is improper if there is evidence that would allow reasonable people to differ as to the result. *Id.*

[12]   To prove a claim of medical malpractice, a plaintiff must show that: (1) the health care provider owed a duty to the plaintiff; (2) the health care provider breached that duty; and (3) the breach proximately caused the plaintiff's injuries. *Bhatia v. Khollipara*, 916 N.E.2d 242, 245 (Ind. Ct. App. 2009). "'In medical malpractice cases, it is well-established that when the medical review panel opines that the plaintiff has failed to make a prima facie case, she must then come forward with expert medical testimony to rebut the panel's opinion[.]'" *Id.* (quoting *Brown v. Banta*, 682 N.E.2d 582, 584 (Ind. Ct. App. 1997), *trans. denied*). To determine whether the health care provider's conduct fell below the legally prescribed standard of care, the plaintiff must present

expert testimony to establish what a reasonably prudent health care provider would or would not have done in treating the plaintiff.[4] *Id.*

[13] Here, because the medical review panel concluded that Riley had not breached the applicable standard of care in its treatment of Gabe, the Meeces were required to present expert testimony that Riley breached the applicable duty of reasonable care. *Id.* At trial, the Meeces called a single expert witness to testify on their behalf, Dr. Wilson. Dr. Wilson testified that Gabe had died of an "adverse drug reaction from the intrathecal methotrexate" which the health care providers "didn't recognize" until it was too late. Tr. Vol. I at 143. On direct examination, the Meeces' counsel asked Dr. Wilson, "And based on your statement that [Dr. Vik] and Riley just missed this, *you believe the Doctor's conduct fell below the standard of care?*" *Id.* at 152 (emphasis added). Dr. Wilson responded, "I do believe that the conduct fell below the standard of care." *Id.* Despite that testimony, again, the jury entered a verdict in favor of Dr. Vik.

[14] The following colloquy then transpired on cross-examination:

> Q: You're not testifying in this case that the nurses at Riley Hospital for Children breached the standard of care in treating Gabe, are you?
>
> A: They did not. I am not testifying to that.

---

[4] An exception to this rule is that a plaintiff is not required to present expert testimony in those cases where the deviation from the standard of care is a matter commonly known to lay persons. *Bhatia*, 916 N.E.2d at 246 n.1. The Meeces make no argument that the applicable standard of care in this case is a matter commonly known to lay persons.

Q: And you don't have any criticism with the nursing care provided to Gabriel Meece, do you?

A: No, sir.

*Id.* at 158. Thus, contrary to his affidavit, where he had stated that Riley's conduct had breached the applicable standard of care, Dr. Wilson explicitly testified at trial that Riley had not breached the standard of care. Accordingly, we must agree with Riley that Dr. Wilson's testimony did not rebut the medical review panel's opinion that Riley was not negligent in its treatment of Gabe.

[15] Still, on appeal, the Meeces direct us to Dr. Vik's testimony that the standard of care required that Gabe's health care providers "[w]atch [Gabe] carefully for side effects while [he received] methotrexate and chemotherapy." *Id.* at 118. But, while that testimony established the standard of care for all of Gabe's health care providers, the Meeces do not direct us to any expert testimony presented at trial that Riley's conduct fell below that standard of care.

[16] Instead, in their brief on appeal, the Meeces state, generally, that Riley's records, as well as the testimony of Dr. Wilson, Dr. Vik, Natalie, and a nurse show that Riley violated the standard of care. But the Meeces' citations to portions of the transcript and exhibits do not include any evidence showing that Riley breached the applicable standard of care. The Meeces direct us only to evidence to support their general allegations that Riley made perceived errors in its treatment of Gabe, such as not having explained "the possibility of methotrexate toxicity" to the Meeces before starting Gabe's treatment or that

the methotrexate infusion given on June 8 "could have been delayed." Appellees' Br. at 15. The Meeces state, without citation to relevant portions of the record, that Riley's "nurses, nurse practitioners, fellows, and residents . . . either caused or contributed to Gabe's death." *Id.* at 16.

[17] We hold that the Meeces did not present evidence at trial to prove that Riley breached the applicable standard of care in its provision of health care to Gabe. Accordingly, the trial court erred when it denied Riley's motion for directed verdict at the close of the Meeces' presentation of evidence at trial. *Cf., Syfu v. Quinn*, 826 N.E.2d 699, 704 (Ind. Ct. App. 2005) (holding summary judgment warranted for defendant where plaintiff's expert did not state that defendant's conduct fell below the standard of care); *Perry v. Driehorst*, 808 N.E.2d 765, 770 (Ind. Ct. App. 2004) (holding summary judgment warranted for defendant where plaintiff designated portions of defendant physician's deposition testimony that test done on plaintiff was "suboptimal and flawed," but did not establish either standard of care or that defendant's conduct fell below standard of care), *trans. denied*. The issue of whether Riley committed medical malpractice should not have been presented to the jury. We reverse the judgment in favor of the Meeces on their negligence claims against Riley.

[18] Reversed.

Baker, J., and Robb, J., concur.